298 So.2d 269

**Marvin C. PALMER**

v.

**The THOMAS JEFFERSON HOTEL, INC.,
a corporation, and the National Hotel
Company, Inc., a corporation.**

**Civ. 264.**

Court of Civil Appeals of Alabama.

July 24, 1974.

M. Clay Alspaugh, Birmingham, for appellant.

London, Yancey, Clark & Allen, and Clarence L. McDorman, Jr., Birmingham, for appellees.

BRADLEY, Judge.

Appellant-plaintiff, Marvin C. Palmer, filed a complaint in the Circuit Court of Jefferson County, Birmingham Division, alleging that he was injured on or about August 18, 1970 as the result of the collapse of a chair while he was a business invitee of a hotel owned and operated by appellees-defendants. The defendants filed a plea in short by consent, etc. Trial was had before the court and a jury. A verdict for plaintiff in the amount of $1,000 was returned and judgment was entered accordingly. Plaintiff applied for a new trial on the ground that the damages were insufficient. The new trial application was denied. The appeal to this court is from the order denying the new trial. There is no

cross-appeal by defendants, nor have they filed cross-assignments of error.

The sole issue before this court is whether the trial court erred in refusing to grant a new trial for the inadequacy of the damages. This being the sole issue, we will confine ourselves to the damages aspect of the case. We say this because the defendants have been found to have negligently caused plaintiff's damages, and they have not cross-appealed or cross-assigned errors; so the liability issue is not before us for resolution and does not enter into the decision of the damages question. See Watts v. Pettway, 49 Ala.App. 324, 272 So.2d 251; Seitz v. Heep, 243 Ala. 376, 10 So.2d 150.

Marvin Palmer, the plaintiff, was injured at the Thomas Jefferson Hotel during the evening hours of August 18, 1970 as the result of a chair in which he was sitting breaking apart. The next morning plaintiff went to the University Hospital in Birmingham and was treated for lower back pains and pains in the left leg. He was released from the hospital that same day and returned to the Thomas Jefferson Hotel. The next day he returned to Pensacola, Florida, his home. On August 21, 1970 he went to see Dr. Byron, an orthopedic surgeon, who admitted him to Sacred Heart Hospital. Upon admission, Palmer was placed in traction where he remained for six days. Plaintiff continued to receive treatment from Dr. Byron until Dr. Byron moved to California. During the time Dr. Byron was treating plaintiff, he recommended that plaintiff submit to surgery on his back, but plaintiff would not.

On September 8, 1970 Dr. E. B. Roberts, a registered chiropractor, was consulted by the patient. Dr. Roberts in his diagnosis found a "posterial lateral disc protrusion" at the level of L4, L5 and L5–S1 unilateral on the left side. The patient was under the care of Dr. Roberts for about ten months. During this time Dr. Roberts gave Mr. Palmer chiropractic manipulations and physiotherapy three times a week, but Mr. Palmer received only temporary relief. Dr. Roberts finally recommended surgery to the patient.

Dr. P. G. Batson, Jr., another orthopedic surgeon in Pensacola, Florida, was consulted on July 29, 1971. Dr. Batson's diagnosis revealed sciatic pain in the patient's back and down the back of his left leg with some problems with his reflexes. Dr. Batson's opinion was that the probable herniated disc was acutely and directly related to the August 18 accident. Conservative treatment was commenced and Mr. Palmer was referred to vocational rehabilitation for help in obtaining a back brace. Dr. Batson did not see Mr. Palmer again until February 14, 1972. At this time plaintiff was still suffering severe pain in his back and left leg and Dr. Batson recommended a myelogram. The myelogram confirmed that a disc protrusion was pressing against nerves in the plaintiff's back. Dr. Batson suggested a laminectomy. This operation was performed on August 30, 1972.

There was testimony by both doctors that preexisting arthritis in the lumbar spine area had been aggravated, but there was no testimony that this condition contributed to plaintiff's present disability.

Dr. Batson and Dr. Roberts both stated that even after the operation Mr. Palmer would have ten to fifteen percent permanent partial disability to the whole body, and for some types of jobs there could be up to eighty percent disability where lifting was required.

Mr. John Newman, an employment expert, testified that plaintiff now suffers a seventy to seventy-five percent employability loss for the job he is now performing, and would suffer a one-hundred percent loss in the area of medium or heavy industry. He further stated that plaintiff is able to perform parttime jobs only.

As a result of the accident on August 18, 1970, the plaintiff has been in continuous pain. He has been in the hospital three times for a total of about eighteen days, and has not been able to do any type of

work on a continuous basis. Mr. Palmer stated that since the operation on August 30, 1972 his condition has been very much the same, but he now can perform some types of work if he takes his tylenol, a form of pain-killer.

Before the accident appellant had been a salesman on the road, selling an invention designed by him to be used to display headboards and footboards in retail furniture stores. Since the accident he has made an effort to sell cars, but due to pain and his limited ability to move about, he has not been able to work steadily.

Appellant testified that his medical and hospital expenses were slightly in excess of $3,300.

Plaintiff argues in support of his contention that the damages awarded are inadequate in that the proven medical and hospital expenses alone amounted to over $3,300. Added to this is the testimony of the doctors that he will suffer a fifteen percent permanent partial disability to the body as a whole; the testimony of the employment expert, Mr. Newman, that he suffers an eighty percent employment disability; and his lost earnings. Further, there is the question of pain and suffering. The plaintiff testified that he had been in constant pain for about three years.

■ The rule is well settled in this state that a new trial may be awarded for excessive or inadequate damages, Title 7, Section 276, Code of Alabama 1940, as Recompiled 1958, and as amended; however, an order overruling a new trial request will not be set aside unless the evidence is so contrary to the verdict as to convince the court that it is wrong and unjust. Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447. Similarly, in Smith v. Winkles, 49 Ala.App. 454, 273 So.2d 215, a case concerned with a motion for new trial on the sole ground of inadequacy of damages where there was no improper motive or influence on the jury, we said that the question to be answered was whether the damages verdict was so opposed to the evidence as to clearly fail to do justice. To help us answer that question, we examined the case of King v. Sturgis, 45 Ala.App. 553, 233 So.2d 495. There the verdict had also been for plaintiff in the amount of $1,000. The evidence of damages showed multiple injuries to plaintiff's body requiring many weeks in bed, many weeks in a leg cast, more weeks in a wheelchair, and then a period of time on crutches. The injuries caused one leg to be shorter than the other. Prior to the accident, plaintiff worked at a job requiring that he stand. Now he can work only in a sitting position. We held that the verdict was inadequate to compensate plaintiff for his injuries.

In Walker v. Henderson, 275 Ala. 541, 156 So.2d 633, the Supreme Court reversed the trial court's order overruling a motion for new trial on the ground of inadequate damages where the verdict of the jury was for $2,000, and the court pointed out that plaintiff's medical and hospital bills amounted to $1,656.31, leaving only $343.69 for pain and suffering and permanent physical impairment. Because of the injuries, long hospitalization, permanent disability, and pain endured, plaintiff's damages were deemed to be grossly inadequate.

■ In the instant case, although the plaintiff's injuries were not as numerous as in the cited case, his pain and suffering has been constant over a three year period, his medical and hospital visits have been numerous and lengthy, plus his medical and hospital expenses were in excess of $3,300, his left leg has atrophied, and he is permanently disabled not only physically but also as to employment. In the face of this evidence we can only conclude that the $1,000 verdict is totally inadequate and fails to do justice for the plaintiff.

The judgment appealed from is reversed, and the case is remanded for a new trial.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.