[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 10 
This is an appeal and cross-appeal from a judgment granting Alabama Power Company the right to condemn certain property in Jefferson County for a transmission line right of way and awarding defendants Hamilton, the landowners, $33,600 damages. The Power Company appeals from the amount of the award. The landowners cross-appeal from the trial court's determination that Alabama Power Company had *Page 11 
the right to condemn their property. Landowners also move for a dismissal of the appeal. We deny landowners' motion to dismiss the appeal and affirm the trial court's judgment granting the right to condemn and awarding damages.
 MOTION
Landowners contend the Power Company's appeal should be dismissed because the Power Company did not appeal within 30 days after the entry of final judgment as provided by Tit. 19, § 23, Code of Alabama 1940. They argue that the provisions of Tit. 19, § 23, as to the time for filing an appeal were not modified by the adoption of Rule 4 (a), ARAP.
Appendix III, ARAP, indicates that Tit. 19, § 23, is modified by adoption of ARAP. Moreover, Rule 4 (a) states:
 "(1) Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the Supreme Court or to a court of appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from. . . ." [Emphasis supplied.]
See Acts of Alabama, 1971, No. 964, Vol. III, p. 1722 [Tit. 13, § 17 (1), 1973 Cumulative Supplement].
Under Tit. 19, § 23, this is a case in which appeal is permitted as of right to the Supreme Court. Notice of appeal was filed within 42 days of the denial of the motion for a new trial. Consequently, we overrule the landowners' motion to dismiss the appeal.
 MERITS Alabama Power Company's Appeal
The Power Company contends that several reversible errors were committed in the trial of this case and that these errors resulted in an excessive verdict.
I. Alabama Power argues that testimony by the landowners' expert witness which incorporated potential lost profits from a loss of lots in a nonexistent subdivision was inadmissible and resulted in an excessive verdict.
The property in question consisted of two parcels containing about 186 acres of undeveloped pasture land and timberland located about two miles outside the city limits of Bessemer. No steps had ever been taken to subdivide the property or to prepare it for subdivision. The total acreage within the right of way over the two parcels is 7.658 acres.
The landowners' expert, Mr. Barnes, testified concerning the possible subdivision of the property and estimated the landowners' damages at $41,500. On cross-examination, he stated that he included loss of future profits on lots in his estimate. Further testimony indicated that his estimate was based on the total loss of the usefulness of the property.
Our rule relative to this issue is stated in Thornton v. Cityof Birmingham, 250 Ala. 651, 655, 35 So.2d 545, 547 (1948):
 ". . . Evidence of value of the property for any use to which it is reasonably adapted is, as already stated, admissible but the proof must be so limited and the testimony restricted to its value for such purpose. Of probative tendency on this issue is the offer of a proposed plan or a possible scheme of development, and the trial court so held, but it was not permissible to incorporate in such a plan the speculative price of the individual lots. . . . We note the following pertinent statement from [2] Nichols on Eminent Domain, [2d Ed.,] supra:
 "`As bearing upon these issues [market value] the owner may offer a plan showing a possible scheme of development for the purpose for which it is most available, but he cannot go further and describe in detail to the jury a speculative enterprise for which in his opinion or that of some expert the land might be used, and base his estimate of value upon the profits which he would expect to derive from the enterprise.' (P. 1170)" *Page 12 
Landowners' witness Barnes testified that the highest and best use of the property was development as "single family, residential or estate size lots." On the other hand, Alabama Power's appraisers testified that the property had no value as a site for a subdivision and that the best use was agricultural. This conflict presented a jury question as to the highest and best use of the property.
Since there was testimony to the effect that the property was reasonably suited for development as a subdivision, testimony concerning its value for that purpose was admissible. Alabama Power contends that Barnes' means of arriving at his opinion of the value of the property made his testimony inadmissible underThornton. We do not agree.
There is no indication that Barnes based his opinion on thespeculative valuation of individual lots. His statement that his estimate included loss of future profits or lots was, at best, ambiguous. In view of his later statement that his estimate was based on the total loss of usefulness of the property, we do not think that we must necessarily conclude that his first statement meant that he had arrived at his estimate by giving a value to individual fictitious lots. Furthermore, there was no testimony as to the price of individual lots.
We note also that, although the trial court overruled Alabama Power's motion to exclude the whole of Barnes' testimony, the trial court did exclude testimony concerning any possible profit and observed that there had been no testimony of any lots on a map or plat, fictitious or otherwise.
We find no error in the trial court's refusal to exclude the entire testimony of Barnes.
II. Alabama Power also contends that the landowners' persistent attempts to introduce evidence concerning subdivisions in the area of the subject property over the sustained objections of Alabama Power was, in its cumulative effect, ineradicable and resulted in an excessive verdict.
The landowners questioned Mr. Barnes concerning certain subdivisions in the Bessemer area and the sale of lots in those subdivisions. The court sustained Alabama Power's objections to some questions concerning such subdivisions.
The landowners argue that there has been no showing of prejudice and that the jury's verdict was within the bounds of the highest and lowest estimates of damages in evidence.
We have examined the record of the questioning complained of and find that the record does not support Alabama Power's contention that the landowners' questions concerning subdivisions in the Bessemer area were so persistently repeated as to have prejudiced Alabama Power's case. The trial court did not forbid all questions concerning subdivisions in the Bessemer area, and the landowners did not ask the same improper questions repeatedly. Rather, the questions to which objections were sustained were, for the most part, different from previous questions which the court had refused to permit.
III. Alabama Power contends that the trial court erred in sustaining the landowners' objections to Alabama Power's cross-examination of one of the landowners with regard to the tax assessment of the property to test his memory or recollection and with regard to the reasons or basis for his valuation of the land.
The landowners respond that the questions asked were argumentative and repetitious and that other questions and answers covered the same testimony. Moreover, the landowners contend that the questions concerned assessments made seventeen years before and were too remote to have any probative value. We agree.
Evidence of tax assessments is not admissible to prove the value of the property taken, but is admissible to show an admission against interest, to test the witness' credibility, and to test his judgment of value and his memory. Etowah Countyv. Clubview Heights Co., 267 Ala. 355, 357, 102 So.2d 9 (1958). But, as Etowah seems to imply, rejection of such evidence, even *Page 13 
when offered for a proper purpose, is not necessarily reversible error.
 "In condemnation cases, to justify a reversal of the condemnation award, the reviewing court must conclude that substantial prejudice resulted. . . ."
State v. Rigas, 282 Ala. 541, 543, 213 So.2d 386, 387 (1968). See also Rule 45, ARAP.
The record shows that the landowner's testimony as to the damages to his property was $60,400. Mr. Barnes testified that the damages amounted to $41,500. Mr. Maloy, a real estate agent concerning whose testimony no error has been argued by Alabama Power, testified that the damages amounted to $61,000. The verdict was for $33,600. In view of these circumstances, and upon our review of the evidence, error, if any, in sustaining the landowners' objections to Alabama Power's questions regarding the tax assessment or regarding the basis for the landowners' valuation cannot be said to have resulted in substantial prejudice and to have amounted to reversible error.
IV. Alabama Power also contends that the trial court erred in refusing to declare a mistrial because of the landowners' closing argument with regard to the difference in the economic positions of the parties. The landowners contend that the portion of the closing argument in the record fails to disclose the context of the argument in question and that the argument was actually made in response to argument by Alabama Power, whose attorney had originally raised the matter.
The following exchange is all that the record contains concerning the landowners' argument and the context in which it was made:
 "MR. THOMASON: The Alabama Power Company wants to say, `Well, we're real nice folks and want to be fair, we're just serving the public.' Well, they are not. They're out to make a profit and that's all they're out to do. They say, `We want to be fair to Mr. Hamilton but Mr. Hammlton wants to raid us.' Mr. Hamilton, according to them, has $500,000 worth of property and wants to raid this poor little old Alabama Power Company, this little conglomerate of five utilities —
 "MR. BAINS: We ask for a mistrial, Your Honor. This is not argument or rational argument or legal. He has already over extended the boundaries of reason and the boundaries of law and we move for a mistrial.
 "THE COURT: At this time I'll overrule your motion for a mistrial, but Mr. Thomason, if you will refrain from referring to the disparity of the two parties.
"MR. THOMASON: They refer to Mr. Hamilton's wealth.
"THE COURT: I'll overrule your motion."
The statements of Mr. Thomason, the landowners' attorney, indicate that he was responding in kind to an argument made by Alabama Power. Alabama Power has not challenged the landowners' claim that Alabama Power had previously referred to the wealth of Mr. Hamilton, one of the landowners.
We find no error in the trial court's overruling Alabama Power's motion for a mistrial for the same reasons which this Court gave in Alabama Electric Co-operative, Inc., v.Partridge, 283 Ala. 251, 256, 215 So.2d 580, 584 (1968):
 "It would appear from the record that the entire argument of appellants, or the language that plaintiff's (appellee's) counsel contended he was answering `in kind,' was not set out in the record. We hold that because the exact language is not set out in the record, that is the exact language that was used by defendants (appellants), and was being answered `in kind' by appellee (plaintiff), the record thereupon being incomplete, this court is not in a position to say that the judgment of the trial court in overruling the motion for a new trial on this point was erroneous, and certainly should not have been the basis for overcoming the presumption in favor of the conclusions of the trial court. Nothing in the record discloses that the trial court's ruling on this aspect *Page 14 
of defendants' motion for a new trial was plainly erroneous or manifestly unjust. . . ."
V. Alabama Power contends that the trial court erred in refusing to grant the following requested written charges:
* * * * * *
 "9. The Court charges you, ladies and gentlemen of the jury, that the landowners in this case may offer a plan showing a possible scheme of development for the purpose for which the land is most suitable, but they are not permitted to incorporate in such a plan the speculative price of the individual lots."
* * * * * *
 "17. The Court charges you, ladies and gentlemen of the jury, that the burden is on the landowners in this case to satisfy you that their lands adjacent to the right of way condemned have been damaged, and if your minds are left in a condition of doubt or uncertainty as to whether or not such adjacent lands have been damaged, or to the nature and extent thereof, then you shall not award anything as damages to such adjacent lands. * * *" [Emphasis supplied.]
The landowners respond that the charges given by the trial court adequately and correctly stated the law.
Charge number 17 is faulty. Its language concerning doubt oruncertainty being left in the minds of the jurors places too great a burden of proof on the landowners. Parker v. Williams,289 Ala. 466, 471, 268 So.2d 746 (1972). The burden on the landowners was to prove their damages to the reasonable satisfaction of the jury, but as stated in Alabama GreatSouthern R.R. Co. v. Hill, 93 Ala. 514, 527, 9 So. 722, 727
(1890):
 ". . . The mind may be reasonably satisfied of a given fact, and yet not be certain of it, nor free from doubt in respect of it. . . ."
In Hill, this Court upheld the trial court's refusal of a charge which instructed the jury to find against the plaintiff if they were in doubt and uncertainty concerning certain essential facts. The trial court did not err in refusing requested charge number 17.
Assuming that requested charge number 9 is a correct statement of the law under Thornton v. City of Birmingham, supra, we find no reversible error in its refusal in light of the following portion of the trial court's oral charge:
 "In determining what is just compensation, you may consider the uses to which the property is reasonably adapted, though the property is not presently so used, as the landowner is entitled to have the value of the property determined based on his highest and best use. If you are reasonably satisfied that there existed a prospective use affecting the value of the property at the date of the taking, that is an element for your consideration, but you should not consider speculative or imaginary uses of the property or merely speculative plans of the property owner, which was the 12th day of October, 1973. That is an element for your consideration, but you should not consider speculative or mere speculative plans of the property owner."
Although this charge does not mention incorporation of the speculative price of individual lots, it adequately covers the principal involved.
 The Landowners' Cross-Appeal
On cross-appeal, the landowners challenge Alabama Power's right to condemn their property. They urge this Court to overrule its prior decisions by holding that the legislature has, by the passage of legislation which effectively grants all power to utility companies to determine how, when, and what private property will be taken, unlawfully delegated its legislative function to a body which lacks impartiality and has, in violation of the U.S. Constitution, sanctioned the taking of private property without due process of law.
The rule of law which the landowners urge us to overturn is stated in Berry v. Alabama Power Co., 257 Ala. 654, 657,60 So.2d 681, 683 (1952): *Page 15 
 "The general principle is well established that the delegation of the power of eminent domain to a grantee, without restriction, carries with it the power to locate the route, and its location or necessity will not be interfered with by the courts if it is made by the utility in good faith and is not capricious or wantonly injurious. [Citations omitted.]"
 ". . . Necessity to condemn is a legislative question, not judicial. It is granted by statute to petitioner [Alabama Power Co.] . . . The province of the court is to see that the right is not abused. . . ."
Berry clearly recognizes that the legislature has delegated
certain powers to public utilities. See Code of Alabama 1940 (Recompiled 1958), Tit. 10, §§ 74, 181, Tit. 48, §§ 336 (1)-(2); 1973 Cumulative Supplement, Tit. 10, §§ 71, 75. The landowners assert that granting public utilities the power to determine the necessity for exercising their power of eminent domain over particular property is an unlawful delegation of legislative power.
The legislature is authorized by § 23 of the Alabama Constitution 1901 to provide for and regulate by general laws the exercise by persons and corporations of the rights of eminent domain. If the exercise of these rights is to be authorized and regulated by general laws, the decision as to whether the condemnation of a particular piece of property is necessary must, of necessity, be made outside of the legislature. The power must be delegated. The landowners contend that the power should be delegated to an impartial governmental agency or to the courts, not to the interested private entity itself.
A similar argument was made in Porter Coal Co. v. Davis,231 Ala. 359, 165 So. 93 (1935). The legislature had enacted a statute which gave to the miners employed and working in a coal mine the power to furnish a check weighman and which directed the operator of the coal mine to give the weighman access to the mine's scales, measures, weights, and accounts and to permit him to examine them. Defendant, an operator who had prevented plaintiff, a weighman, from carrying out his duties, contended that the statute unlawfully delegated to the miners the power to exercise their discretion in enforcing the statute. Rejecting the operator's argument, this Court said:
 "`. . . The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation.' United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 484, 55 L.Ed. 563; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294." [Emphasis supplied.]
231 Ala. at 362, 165 So. at 95.
By analogy to Porter Coal, we conclude that the constitutional prohibition against the delegation of legislative power to make a law does not forbid the legislature's making a law which permits the exercise of reasonable discretion by grantees of the power of eminent domain in determining the necessity for condemning particular lands.
The landowners further argue that under Fuentes v. Shevin,407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), they are entitled to a hearing prior to being deprived of their property. Apparently, they mean that there must be a hearing to determine the necessity of the condemnation proposed, for Tit. 19, Chapter 1, already provides for a hearing in the probate court prior to condemnation. As we have already stated, the determination of necessity is a legislative matter that may be delegated to the grantee of the power of eminent domain. The courts will not interfere in this determination in the absence of abuse. *Page 16 
To conclude this issue, we find no constitutional impediment to the legislature's permitting a grantee of the power of eminent domain to determine the necessity for condemning particular lands.
AFFIRMED.
JONES, ALMON and EMBRY, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the Chief Justice, concur.