This is an appeal from two related actions which were consolidated for trial in the Circuit Court of St. Clair County.
On October 21, 1975 Roscoe B. Hogan filed an action against the Alabama Power Company for trespass and fraud and misrepresentation in the Circuit Court of St. Clair County. The complaint was later amended to include a third count for the statutory penalty under Title 47, Section 272, Code of Alabama 1940 (Recomp. 1958) for willfully and knowingly cutting timber.
On December 13, 1975 the Alabama Power Company filed an application for an order of condemnation against Roscoe B. Hogan and others in the Probate Court of St. Clair County, seeking to condemn and acquire certain portions of the land belonging to Hogan and upon which the alleged trespass occurred. The condemnation application was granted and commissioners appointed who assessed condemnation damages in the amount of $6,500. Hogan appealed the order of condemnation to the Circuit Court of St. Clair County.
The appeal from the condemnation and the tort suits were consolidated for jury trial, which began September 14, 1976. The jury returned a verdict for Hogan in the amount of $1,748 in the damage suit and $6,000 in the condemnation case. Hogan's motions for new trial in both cases were overruled and he appeals.
Sometime in August 1975 Roscoe B. Hogan was contacted by Frederick J. McGuffin, an employee of the Alabama Power Company, about a proposed transmission line which would cut across Hogan's property in St. Clair County. McGuffin showed Hogan maps and area photographs illustrating where the Power Company intended to survey and put its transmission line. Hogan told McGuffin he did not want the power line in the proposed location, but would be willing to discuss its location to the south of his property. The proposed line would have divided Hogan's property approximately in half, running through an existing lake and garden. Hogan wanted the line placed up a mountainside on the southern side of his property. There was conflict in the evidence whether Hogan said he did not want the line on his property at all, or whether he simply did not agree to the line's bisecting his property.
In any event, Hogan specifically told McGuffin that he did not approve the proposed line and that he did not give the Power Company permission to enter his land for the purpose of surveying its proposed line until further discussion with the Power Company. McGuffin put that information into his report to the Power Company, copies of which were circulated within the Power Company.
Hogan heard nothing more from the Power Company until October 1975 when he received a telephone call from his caretaker, who told him surveyors from the Power Company had been on the property for two days driving their trucks around, cutting down trees, and surveying. Hogan then spoke with Jess Sullivan, the chief surveyor, and informed Sullivan that the Power Company had not been given permission to survey its proposed transmission line. Sullivan and his crew left immediately after that communication and did not return until after the condemnation order was granted. By the time Hogan was aware the Power Company was on his land, two proposed locations for the transmission line had been cut and surveyed.
Sullivan testified that he had not been notified by his superiors that Hogan had not given permission for the survey crew to enter his property, and therefore assumed permission had been granted. Apparently McGuffin's report had been given to the wrong crew. However, according to testimony from Sullivan's superior, R.T. Hardin, he knew permission for the survey had been withheld by Hogan at the time he dispatched Sullivan and his crew to make the survey.
Furthermore, it appears that the Power Company considers a landowner's grant or withholding of permission to enter his or her property irrelevant if the Power Company has decided to make a survey. Hardin *Page 1381 
said it is the practice of the Alabama Power Company survey crews to enter property, cut down trees, and make their survey even when they have actual knowledge that the landowner has denied them permission to do so.
W.E. Vanderford, the assistant manager of transmission line projections, said that after McGuffin reported to him the substance of McGuffin's conversation with Hogan, a decision was made to locate the transmission line southeast of the initially proposed location so as not to interfere with Hogan's present use of his land. The difference in distances between the present right-of-way and the proposed right-of-way is one thousand feet at the widest point and five hundred to six hundred feet at the narrowest point. Vanderford indicated that since the line had been moved southward as requested by Hogan, it was not necessary for him to contact Hogan before making the survey.
At the time of the survey and subsequent condemnation the property, composed of approximately two hundred three acres, was used by Hogan to raise cattle and hogs, and as a vacation spot. Hogan had a cabin with a swimming reservoir, a garden and a lake or pond. According to the Power Company, the present location for the transmission line does not interfere with either the farming activity or the scenic area surrounding the cabin. Nor does Hogan center his complaint on the line's interference with the present usage of his property.
Hogan had planned to develop his acreage into a resort type area by making a large lake, subdividing the property into smaller lots, and building chalet-style cabins.
In brief Hogan submits six reasons for the reversal of the trial court's judgments.
The first two reasons concern the inadequacy of damages under the trespass and fraud counts and the count asking for the statutory penalty, authorized by Title 47, Section 272, Code of Alabama 1940 (Recomp. 1958).
Hogan's action for damages was tried on three different theories and went to the jury on all three: trespass, misrepresentation and fraud, and statutory penalty for cutting trees. The jury's verdict was as follows:
 "We the jury find the issues in favor of the plaintiff and assess his damages in the sum of one thousand seven hundred and forty-eight dollars."
Thus it does not appear whether the award of damages was based on the trespass count, fraud count, or the statutory penalty count. Hogan maintains that the damages awarded are "against the clear and convincing weight of the uncontroverted evidence" and therefore inadequate as a matter of law.
In Hardy Insurance Co. v. Baumhauer-Croom Insurance, Ala.Civ.App., 339 So.2d 584, 587 (1976), we said:
 "The standard of review when adequacy of damages is challenged is whether the record affirmatively reveals either an improper motive of, or improper influence on, the jury. If there is no such showing, then it must appear that the verdict fails to give substantial compensation for substantial injury. Alabama Farm Bureau Mutual Casualty Insurance Co. v. Anderson, 52 Ala. App. 651, 296 So.2d 739 (1974)."
In Palmer v. Thomas Jefferson Hotel, Inc., 53 Ala. App. 185,298 So.2d 269 (1974), we said that where no improper motive or influence on the jury appears, the question to be answered is whether the damages verdict is so opposed to the evidence as to clearly fail to do justice. Additionally, where the trial judge refuses to grant a new trial, the presumption in favor of the correctness of the jury verdict is thereby strengthened.Hubbard Bros. Construction Co. v. C.F. Halstead Contractor,Inc., 294 Ala. 688, 321 So.2d 169 (1975); Walker v. Henderson,275 Ala. 541, 156 So.2d 633 (1963).
The measure of damages for trespass to land when trees have been cut is the difference between the value of the land immediately before the trespass, i.e. the *Page 1382 
cutting, and its value immediately after. Hammond v. Stephens,269 Ala. 210, 112 So.2d 324 (1959); Dollar v. McKinney,267 Ala. 627, 103 So.2d 785 (1958).
Hogan testified that the trespass to his land damaged it in the amount of $5,000. The two real estate agents called as experts on behalf of the Power Company testified that the cutting of the trees on Hogan's property by the Power Company's survey crew did not affect the value of the land at all. Also there was testimony that the value of the trees cut was $3.00. The jury saw pictures taken immediately after the trees were cut and thus could form a judgment for themselves as to the extent of the damage inflicted to the property as a result of the trees being cut. It was certainly the jury's prerogative to decide which if any testimony to believe. Thus, we are unable to say the award of $1,748 was grossly inadequate compensation for the trespass.
The main thrust of Hogan's argument in brief seems to be directed toward the failure of the jury to award punitive
damages, and he relies on the rule that a jury is warranted in awarding punitive damages in a trespass action if the trespass is accompanied by circumstances of fraud, malice, oppression, aggravation or gross negligence. Rushing. v. Hooper-McDonald,Inc., 293 Ala. 56, 300 So.2d 94 (1974). The evidence would support a finding that the trespass was attended by such aggravated circumstances. However, the question is not whether the jury could have awarded punitive damages, but rather whether they must have awarded such damages and if so in how large an amount.
We are not persuaded that the jury did not award punitive damages. It is entirely possible that the jury believed that the cutting of the trees did not noticeably affect the value of Hogan's land, and awarded only nominal damages for the trespass. Thus, the award of $1,748 could include punitive damages. Since the amount of punitive damages awarded is a matter of discretion with the trier of fact, Badgett v.McDonald, 53 Ala. App. 726, 304 So.2d 228 (1974); Williams v.Clark, 50 Ala. App. 352, 279 So.2d 523, cert. den. 291 Ala. 803,279 So.2d 526 (1973), this court cannot say the award is grossly inadequate and requires reversal.
Notwithstanding our conclusion that the award is not inadequate, we are not convinced that a jury must award punitive damages although the facts are such that it could, which position Hogan seems to be advocating. In Alabama PowerCo. v. Rembert, 282 Ala. 5, 208 So.2d 205 (1968), the supreme court held the trial court had erred in directing the jury that it "should" assess punitive damages. The court said:
 "Punitive damages are not recoverable as a matter of right except as provided by statute, Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24; and the imposition of such damages is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. Birmingham Electric Co. v. Shephard, 215 Ala. 316, 110 So. 604; . . ." 282 Ala., at 6, 208 So.2d, at 206.
Failure to leave the assessment of punitive damages entirely to the discretion of the jury was reversible error.
Again in Austin v. Tennessee Biscuit Co., 255 Ala. 573,52 So.2d 190 (1951), the supreme court said the assessment of punitive damages is a matter within the jury's sound discretion, and that such damages are not recoverable as a matter of law. The court then concluded:
 ". . . Under the evidence in this case, although the jury may have found the defendant guilty of wantonness as charged in count 2, we cannot say that a failure of the jury to award punitive damages was an arbitrary act." 255 Ala., at 578, 52 So.2d, at 194.
Hogan also attacks the $1,748 award as inadequate under Title 47, Section 272, which provides as follows:
 "Any person who cuts down, deadens, girdles, boxes, or destroys, or takes away, if already cut down or fallen, any cypress, *Page 1383 
pecan, oak, pine, cedar, poplar, walnut, hickory, or wild cherry tree, or sapling of that kind, on land not his own, wilfully and knowingly, without the consent of the owner of the land, must pay to the owner twenty dollars for every such tree or sapling; and for every other tree or sapling not hereinbefore described, so cut down, deadened, girdled, boxed, destroyed, or taken away by any person, he must pay to such owner the sum of ten dollars. Actions under this section may be joined with actions for trespass, for cutting, injuring, or removing timber."
Hogan hired a forester to count the number of trees cut by the Power Company and identify them by type. This expert said he counted 584 hardwood trees or saplings that had been cut and 37 pine trees or saplings, a total number of 621 trees. Hogan says his damages computed under the statute should have been $5,840.
The Power Company responds by arguing the statutory penalty does not apply to them in this instance because Sullivan, the man who cut the trees, did not himself have actual knowledge that Hogan had not given permission for the survey to be made. Furthermore, Sullivan said that only a few trees were cut for the survey lines.
We cannot consider these contentions on their merits for the reason that the verdict was a general one and we cannot say on which count the jury predicated its verdict. And, as we have already said, the evidence does support the trespass count; consequently, as a matter of law, we cannot say that the $1,748 verdict is inadequate.
Hogan's next two issues deal with alleged error committed by the trial court in charging the jury: first, that the trial court erred in giving a particular charge and second, that the trial court prejudicially harmed him by identifying his requested charges as the court gave those charges to the jury. However before this court can consider the merits of the objection, we must first determine whether Rule 51, ARCP, has been observed.
After the trial court completed its instructions to the jury, the jury left the courtroom to allow the lawyers to make their objections. The Power Company was allowed to make its objections first. After the Power Company had objected with grounds to certain portions of the trial court's oral charge, the following transpired:
"MR. LAVETTE: Are you through?
 "MR. ALLEN: I'm through as far as the oral charges are concerned; but not as far as the written charges are concerned.
 "THE COURT: Do you have to except to those written charges on the record?
"MR. ALLEN: Yes, sir.
"THE COURT: All right. Go ahead.
 "MR. HOGAN: Your Honor, in the interest of saving time, we would be willing to give the Power Company exceptions to all charges requested and not given by the Court insofar as their own charges are concerned, and also exceptions to the charges requested by the plaintiff or property owner and wherein your rulings were adverse to them. Just as a matter for the record.
 "Could we have the same thing as far as our charges are concerned?
 "MR. ALLEN: You may. And I think the only other matter we would want to bring up would be: I'm willing to allow you to assign or to consider that any appropriate ground of exception was assigned and given —
 "MR. LAVETTE: Now, we don't want to make a deal on anything except your requested charges that you asked for and ours that were given or yours that were given and vice versa.
 "MR. ALLEN: Well, what I'm saying is: You not only have to except, you have to state grounds for the exception. If you're willing to give me the exceptions and also give me whatever grounds I would have —
"MR. LAVETTE: Well, we're —
 "MR. ALLEN: Okay. If not, I'm going to have to make my exception and state grounds. An exception is no good without grounds. *Page 1384 
. . . .
 "MR. HOGAN: Your Honor, we would agree that the grounds may be assigned by both sides — under the agreement — at a later time. And let's let the jury have the case.
. . . .
 "THE COURT: Let's just have an agreement that ya'll will fool with those written charges after we get the jury out.
"MR. HOGAN: That's what I want.
. . . .
 "MR. ALLEN: Well, let me just save us some time, then, and say that — as Mr. Hogan did — that it will be all right for either side to assign specific grounds at a later time.
 "MR. HOGAN: At a later date within the appropriate time limits as provided by law. In other words, I'm not going to say you can come up here after thirty days or we can come up after thirty days within which to file a motion for a new trial and assign grounds.
 "MR. ALLEN: Okay. Let's say we could assign them in a motion for new trial. Is that okay with the Court?
"THE COURT: That's good.
"MR. ALLEN: Okay."
It is quite clear from the colloquy above set out that the trial court and Mr. Hogan and his attorney did not fully appreciate the requirements of Rule 51 as it applies to making objections to written requested charges and assigning grounds therefor.
We recognize that lessons learned in the judicial arena are not easily unlearned and that new ways take a little time to become second nature, but the Alabama Rules of Civil Procedure have been in effect since July 1973 and we believe that is enough time for the bench and bar to become sufficiently aware of these rules so that they can be properly implemented.
Rule 51 is quite specific as to when objections are to be made to written requested charges:
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file and, in such event, shall serve on all opposing parties written request that the court instruct the jury on the law as set forth in the requests."
The rule further specifically provides that:
 ". . . No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
The Committee Comments on Rule 51 are quite candid and clear:
 "Former practice was regulated by Tit. 7, §§ 270-74, 818, Code of Ala. Under these statutes certain anomalous situations existed which are now eliminated. For example, Tit. 7, § 818 gave automatic exceptions to adverse rulings on requested written charges. This permitted a party to sit silently as an erroneous charge was given or a meritorious charge was refused after the court had sifted through numerous charges submitted by the parties. Should the court fail to cover the error in its oral charge, counsel could thereby preserve appellate relief in the event the jury verdict was unsatisfactory. Under this Rule, the party must, as a condition to the right to assert error on appeal, object and state grounds therefor before the jury retires. To facilitate the making of objections to requested written charges, the rule requires that they be served on all opposing parties. For proof of service under such circumstances, see the commentary to Rule 5 (d). The rule also requires that opportunity be given for the making of such objection outside the presence of the jury.
. . . . .
 ". . . Under this rule, charges must be submitted at the close of the evidence or at such earlier time as the court reasonably directs.
 "Logic suggests that oral argument to the jury is best presented when counsel have already been apprised of the court's *Page 1385 
ruling on the charges. Since the rule permits the court to require reasonable advance filing of requests, and, in all events, at the close of the evidence, it should not be difficult for the court to comply with the rule's requirement that counsel be informed of the court's action prior to argument. . . .
. . . . .
 "Hence, at the conclusion of the oral charge, the court should permit opportunity for objections. Inquiry as to the existence of objections should not be made in the presence of the jury . . .
 "If the court upon hearing an objection to the charge declines to supplement or modify its charge, the matter is preserved for appellate purposes. Should the court, after hearing the objection, request submission of additional instructions, counsel would have to comply with the court's request in order to preserve the matter on appeal. Of course, handwritten additional instructions under such circumstances would be acceptable unless ample time was available during an ensuing recess for preparation with greater formality."
In the case at bar counsel for the Power Company objected to the trial court's refusal to give certain written requested charges and the giving by the trial court of certain written charges requested by Hogan but did not assign grounds because Hogan asked for and got an agreement both from the Power Company and the trial court that the grounds could be assigned later in the motion for new trial.
Permission to assign grounds for objections to the giving or refusal to give written requested charges is the heart and soul of Rule 51 for it allows the trial judge to intelligently re-assess the correctness of the oral charge that he has given or proposes to give. Such a re-assessment helps to minimize error and to avoid possible error in the giving or refusal of the requested charges. Therefore, for us to allow the grounds in support of the objections to be assigned in the motion for new trial would destroy the very purpose of the rule. Furthermore, should this court condone such a practice, we would not only have excised the heart of Rule 51, but we will have reverted back to the former practice of permitting a party to dump handfuls of written requested charges on the judge's bench just before the case is submitted to the jury to see how many erroneous charges the judge will give to the jury. We do not believe Rule 51 authorizes nor was intended to authorize a practice whereby grounds offered in support of objections to a written requested charge (whether made to the giving or refusal to give the charge) may be assigned as late as a notion for new trial. We cannot permit Rule 51 to be interpreted in such a manner. Appellant cannot claim error with regard to this portion of Rule 51.
Hogan also argues that the trial court committed reversible error when it, in reading his written requested charges to the jury, identified those charges as being requested by him.
Again, Rule 51 very plainly provides:
 ". . . Those requests marked `given' shall be read to the jury without reference as to which party filed the request. . . ."
In explanation of the effect of this portion of Rule 51, the Committee Comments state:
 "This rule prohibits identification of requested charges by reference to the party requesting same. If the purpose of reading the written charges to the jurors is to impress upon them that instructions prepared by the parties and given by the court are entitled to equal consideration with the court's oral charge and contain correct statements of the law as approved and adopted by the court, it is hard to justify designating certain charges as having been requested by one party or the other. Since it is the duty of the court to instruct the jury on the law, and not the duty of plaintiff or defendant's attorney, it would seem appropriate that the court make no comment as to which party requested the charge. In Carlson *Page 1386 v. Sanitary Farm Dairies, 200 Minn. 177, 273 N.W. 665
(1937), Mr. Justice Loring of the Supreme Court of Minnesota stated:
 "`Before passing to the considerations of this charge, we wish to express our disapproval of the action of some trial courts in announcing, as was done in this case, that any portion of the charge is given by request of either party. A requested charge should be given only when the trial court approves of and adopts as its own the law contained in the request, and it should preferably be incorporated in the appropriate part of the body of the charge so as not to destroy its symmetry.'
 "If the requested charges submitted to the court by the parties are correct statements of the law, little justification exists for singling them out as being charges requested by plaintiff or defendant."
The sentiments expressed by Justice Loring of the Minnesota Supreme Court aptly describe our thoughts on this subject. However, in this instance, we will not declare that the trial court's action in stating to the jury which party requested which charge was so prejudicial as to constitute reversible error. Furthermore, we would point out that Hogan did not object to the trial court's labeling the written charges which were given as being requested by one party or the other until he filed his brief, hence his objection was made too late.
Hogan next says he is entitled to a new trial in the condemnation action on the ground that the Power Company has failed to comply with the constitutional requirement of due process in the manner in which it took its easement. He relies mainly on the necessity clauses of Title 10, Sections 74 and 82, Code of Alabama 1940 (Recomp. 1958). These sections provide that a power company may acquire by condemnation rights-of-way for power lines where necessary, subject, however, to liability for all damages done to the property entered for acquisition purposes.
In the recent case of Alabama Power Co. v. Hamilton, Ala.,342 So.2d 8 (1977), the supreme court said that the legislature has the constitutional authority to delegate the right of eminent domain to the Power Company and that the selection of the route for the power lines is part and parcel of the right to condemn. The only limitation placed upon this authority by the court is that it be exercised in good faith and not in a capricious or wantonly injurious manner. See also Berry v.Alabama Power Co., 257 Ala. 654, 60 So.2d 681 (1952).
In the case at bar the trial court conducted a hearing on the Power Company's application for condemnation of a transmission line easement over Hogan's land and heard extensive testimony from witnesses for both parties. After the hearing the trial court granted the application to condemn the right-of-way. The evidence showed that the Power Company was constructing a 230 kv transmission line from a Clay County substation to Oneonta, Alabama where the power would be distributed to present and potential customers. When told by Hogan that the proposed transmission line route would interfere with the present use of his lake and garden, the Power Company moved the location of the line route somewhere between five hundred and a thousand feet south of the original location on Hogan's property so as to minimize interference with his use of the land.
Although the final location of the power line on Hogan's land could result in interference with its proposed future use, we cannot say that the ultimate location of the power line was a wanton and capricious act resulting in an abuse of the Power Company's right of eminent domain. No error here.
Lastly, Hogan argues that the $6,000 awarded him by the jury as compensation for the condemned land is grossly inadequate and denied him "just compensation" as provided by Sections 23 and 235 of the Constitution of Alabama 1901, and he should have a new trial.
The trial court properly charged the jury that the measure of damages in a *Page 1387 
condemnation action is the difference between the fair market value of the property prior to the taking and the fair market value of the part remaining after the taking, giving effect to any enhancement or damage to the part remaining. See State v.Dempsey, 286 Ala. 397, 240 So.2d 361 (1970).
The evidence reveals that there was a wide disparity in the testimony of the witnesses as to the before and after value of the property in question. The first witness for the landowner testified that the before value of the property was $205,000 and the after value was $61,500. The amount of the damage to the property would be about $143,500 and includes damages to the land remaining after the taking. The second witness for the landowner stated that the before value was $232,000 and the after value was $192,183. The amount of damages would be $39,817 and includes damages to the land remaining after the taking. The landowner testified that the before value was $200,000 and the after value was $100,000 leaving $100,000 as the amount of damage caused by the taking.
The first witness for the Power Company said that the before value was $137,000 and the after value was $132,000 with no damage to the property remaining after the taking. Total damages for the taking would be $5,000. The second witness for the Power Company testified that the before value was $157,400 and the after value was $151,700 with no damage to the remaining land. Total damages for the taking would be $5,700. The amount actually awarded was $6,000.
The verdict of the jury, the trier of the facts, who saw and heard the witnesses testify and who observed their conduct and demeanor while in the witness box is entitled to great weight, and when attacked for being inadequate, the following rule fromThornton v. City of Birmingham, 250 Ala. 651, 657,35 So.2d 545, 549, 7 A.L.R.2d 773, 780, will apply:
 ". . . The verdict of the jury and the ruling of the trial court refusing to set it aside on such ground will not be overturned unless it clearly appears that the verdict was the result of inadvertence or intentional or capricious disregard of the evidence, or was infected with bias, passion, or other improper motive, and that the excessiveness of the verdict was the result thereof. In other words, unless the amount is so large or so small as to carry internal evidence of intemperance in the minds of the jury the verdict must stand.
 "On this issue the courts approve the principle that when the presiding judge refuses to grant the new trial, the favorable presumption attending the verdict of the jury is thereby strengthened." (Citations omitted.)
We are not persuaded in the instant case that bias or prejudice infected the jury's verdict nor are we convinced that the jury's award is so unsubstantial as to require a finding that the jury failed to award just compensation to the landowner. Pappas v. Alabama Power Co., 270 Ala. 472,119 So.2d 899 (1960); Palmer v. Thomas Jefferson Hotel, Inc.,53 Ala. App. 185, 298 So.2d 269 (1974). Consequently there is no error in the order of the trial court overruling the motion for new trial on this ground.
For the reasons above stated, the judgments appealed from are affirmed.
At oral argument before this court, counsel for the landowner made an oral motion for the award of attorney fees. There is no legal basis for such an award. In the absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorney fees paid by the opposing side. City ofVestavia Hills v. Randle, 292 Ala. 492, 296 So.2d 710 (1974).
Furthermore, the supreme court in White v. State, 294 Ala. 502, 319 So.2d 247 (1975) held that attorneys' fees and expenses are not embraced within "just compensation" for land taken by eminent domain.
MOTION FOR ATTORNEY FEE DENIED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 1388