465 So.2d 1105 (1984)
ALABAMA POWER COMPANY
v.
Mack TAUNTON, et al.
83-274.
Supreme Court of Alabama.
December 21, 1984.
Rehearing Denied March 8, 1985.
*1106 Steven F. Casey, Birmingham, W.O. Walton, Jr., LaFayette, for appellant.
John W. Johnson, Jr., Lanett, for appellees.
PER CURIAM.
This case involves a dispute between Alabama Power Company and the owners of a parcel of real estate in Chambers County over the location of some electrical transmission lines. The Power Company filed an application for an order of condemnation in the probate court. The court granted the company an easement along a route chosen by Alabama Power. On appeal, the circuit court ruled that the company's choice of a route for the transmission lines was arbitrary and capricious and it denied the company's condemnation request.
The property in question is an undeveloped 100-acre tract. It is bordered to the east by Interstate 85, to the north by County Highway 79 and to the west by a railroad track. Power lines which pre-existed the lines in question run roughly north and south, effectively dividing the parcel into two segments. The segment to the west of the pre-existing lines contains about 25 acres; the eastern segment contains about 75 acres. Although the property is undeveloped, it is ideally suited for industrial development because it is adjacent to both a railway and an interstate exchange and is in the vicinity of other industrial developments.
In order to alleviate overloading at two of its substations, Alabama Power decided to construct a transmission line to "tap into" the pre-existing lines on the property. W.E. Vanderford, the Power Company employee charged with selecting the tap line's route, testified as to how the route was selected. Vanderford testified that he had originally planned to run the line from the Huguley substation, which is located to the west of the property, toward the property along the right-of-way of Highway 79. According to Vanderford, that plan had to be abandoned when he learned that the highway department planned to construct an overpass over the railroad track adjacent to the subject parcel. In his opinion, the planned reconfiguration of the highway right-of-way attendant to the construction made it impractical to run transmission lines along the route chosen. Instead of running the lines along the highway for their entire distance he chose to run the lines along the roadway until they reached the property to the west of the property in question. At that point the lines turn and proceed in a southerly direction. The property to the west of the plaintiffs' contains a woodyard. Because operation of the woodyard involves the use of cranes, Vanderford chose to go all the way around the property in order to avoid the woodyard entirely. The line crosses the railroad track and approaches the property in question near the property's southern border. Instead of routing the line along the southern *1107 edge of the property, the line crosses the property on a diagonal course in a northeasterly direction and intersects with the pre-existing lines about mid-way between the northern and southern boundaries of the parcel.
According to Vanderford, the primary consideration involved in his choice of a route was accessibility. In case of a malfunction it might become necessary for the power company to be able to reach the tap point. If there is a problem, the employee dispatched to the tap point would need to open a switch at the tap. Then, he would have to return to the service truck, radio the office, and report that the switch had been opened. The process might entail going back and forth several times from the truck to the switch. Vanderford wanted a service vehicle to be able to reach the tap point by driving along the pre-existing easement from Highway 79. He testified that south of the tap point the land slopes toward an area which he thought might be prone to flood. Because power line malfunctions typically occur during inclement weather, Vanderford felt that if he chose a tap point any further to the south the service vehicles might not be able to reach it during bad weather.
The landowners wanted the tap line run near the southern edge of their property. They contend the southern route would be shorter and more direct than the one chosen by the power company and that it lies across land which is higher and hence less likely to flood than the route chosen. There is a dirt road adjacent to the railroad tracks, which the landowners describe as being in good condition. The landowners contend the company could have equal or better access to the tap point if the lines were located along the route they advocated. Access could be had by traveling along the dirt road and the proposed tap line easement. The route advocated by the landowners would cause less damage to their property than the one chosen. The presence of the tap line, as advocated by Alabama Power, will make it difficult for the owners to develop the property to its fullest potential. This proposed location of the tap line will limit the possibilities of building a building with a rail siding near the railroad tracks.
The landowners' contention, in support of the trial court's finding, goes beyond the simplistic proposition that the route they prefer is at least as feasible as the one selected. Indeed, if the landowners were relying upon the ore tenus presumption of correctness to sustain the trial court's "at least as feasible finding," prevailing case law would require our reversal. Such a finding would not meet the arbitrary and capricious test in favor of the landowners.
The landowners do not take issue concerning the constitutional and statutory delegation of this sovereign state's power of eminent domain to the utility, provided always it is remembered the delegation thus made is to enable the agent, to whom the delegation is made, to serve a public purpose and promote the general welfare.
"The advantage that may and does accrue to the one or to the many thus designated to serve the public purpose is secondary and incidental only to the public benefit that is always supposed to be derived from the exercise of the power of eminent domain."
Johnston v. Alabama Public Service Commission, 287 Ala. 417, 421, 252 So.2d 75 (1971).
The state, ever mindful of, and subject to, the source of its sovereignty (the people), declined to delegate its full right of eminent domain to designated agents not subject to such control, and specifically limited the designated agent's exercise of that right. The judicial arm of the sovereign has declared that the agent's taking of private property must not wantonly injure the land and the agent must not act arbitrarily or capriciously. This is in contrast to the single constitutional provision that the sovereign may take but it must make just compensation to the landowner. Const., 1901, § 23. The grant to the designated agent thus secures to the property owner assurance that he is not subject to the unbridled discretion of the *1108 agent. Berry v. Alabama Power Co., 257 Ala. 654, 60 So.2d 681 (1952), is the Alabama grandfather case and it cites C.J.S.:
"The general principle is well established that the delegation of the power of eminent domain to a grantee, without restriction, carries with it the power to locate the route, and its location or necessity will not be interfered with by the courts if it is made by the utility in good faith and is not capricious or wantonly injurious. 29 C.J.S., Eminent Domain, § 91, page 886; Alabama Interstate Power Co. v. Mt. Vernon-Woodberry Cotton Duck Co., 186 Ala. 622, 65 So. 287; 19 AmJur. 733, §§ 106, 108. The Jasper Land Company case [Jasper Land Co. v. Alabama Power Co., 213 Ala. 357, 105 So. 264 (1925)] does not infringe on that principle."
From Berry has developed this court's general holding that the utility's selection of location is only subject to review for abuse of discretion.
In Alabama Electric Cooperative, Inc. v. Watson, 419 So.2d 1351 (Ala.1982), my brother Adams collected and cited cases from Alabama, and elsewhere, regarding the "location" grant of discretion to the Power Company. He distinguished issues, factual differences, and application of law to facts, in a such manner that relevant case law at present is concisely presented in a single opinion. That opinion controls the issue before us. This court observed that Berry established the judicial standard of review for "location" selection. It was then pointed out that Berry and Hamilton (Alabama Power Co. v. Hamilton, 342 So.2d 8 (Ala.1977)) concerned delegation of the power to condemn. In citing Hogan (Hogan v. Alabama Power Co., 351 So.2d 1378 (Ala.Civ.App.1977), a case of "relocation" on a landowner's same property, we found that when the utility changed its original proposed location at the landowner's request, the Power Company's final location did not wantonly injure the land nor was it based on an arbitrary and capricious decision. The opinion recites holdings of courts of other states, including one in which the magnitude of the damage was considered: State Highway Commission v. Danielsen, 146 Mont. 539, 409 P.2d 443 (1965).
In Watson, the Power Company's general position is stated as follows:
"A landowner cannot object merely because another route might have been adopted; or because the company crossed his land in order to avoid crossing some other land, Miller v. Georgia Power Co., [222 Ga. 239, 149 S.E.2d 479 (1966)]. The fact that AEC has run lines within thirty feet of houses on other occasions does not require them to do it this time. Cf. Krenek v. South Texas Electric Cooperative, Inc., [502 S.W.2d 605 (Tex.Civ.App.1973)] in which the landowners' attempt to prove that the company had deviated from a straight line in other areas was held not probative of their assertion that it arbitrarily refused to accept their proposed deviation from the straight line through their property." (Citation omitted.)
Alabama Power Company, however, does not discuss the issue nor the evidence relating to wanton injury to the land, in this case. Further, the sole argument that "tap" point location, if proper from an engineering standpoint, meets all criteria to avoid an arbitrary or capricious location challenge fails to meet this issue. Vanderford, the engineer, testified to three considerations to be given in locating the "tap" point: access, cost, and avoiding bends in the line. He did not consider any point of access other than from a paved highway; he created a bend or angle to reach the selected "tap" point; he said cost would be basically equal; and he gave no consideration to injury to the land. As to the "injury to land" aspect, he stated this to be only an element of damages to be awarded the property owner, if considered at all. The engineer knew the present highest and best use of the property to be industrial. However, he did not make use of the expertise of the Alabama Power Company's Industrial Development Section or its industrial planners, nor did he give any consideration *1109 to the effect on the property's highest and best use of the location of the lines, although information on this was available.
Testimony from the landowners' witnesses established that unnecessary injury to the 100-acre tract was four (4) times the reasonable injury from otherwise available locations of the lines. Unlike negotiations in Hogan, the utility refused to re-examine locations or evaluate the excessive injury to the property through communication with its own expert departments. The excessive injury to the land was intentional and wanton to the extent the utility refused to exercise any discretion, or to avoid unreasonable injury.
The landowners are aware that different minds can reach different conclusions on a particular set of evidentiary facts. However, they do not believe the evidentiary facts establish as a matter of law that only one conclusion can be reached: that no wanton injury to the land occurred, or that the "tap" point location was not determined arbitrarily or capriciously. Only Hogan is factually similar to this case. This court there found no arbitrary or capricious final location after a reevaluation at the landowner's request. In Hogan, this court found a good faith effort to minimize damage, as opposed to a damage factor, in this case, of four times the reasonably available factor of not more than 5% to the whole.
No citation is necessary regarding our standard of review in ore tenus cases. All presumptions of correctness attend the trial court's findings of fact. Wanton injury was a factual issue to be determined by the trial court and its findings were favorable to the landowners, supported by the evidence, and a correct application of law to the facts was made.
The trial court's finding that the decision for location was arbitrary and capricious is also supported by the evidence.
Hogan is the only case considered by this court regarding allegations of wanton injury in a factually similar context. That case clearly reflected an attempt by the Power Company to minimize damages and avoid wanton injury. No such attempt is shown under the evidence in this case.
The "tap" point location was the final decision in locating the energizing source for the new line. This was because of a woodyard located west of the landowners' property, separated from it, however, by a dirt road adjacent to and parallel with a railroad. The right-of-way was planned from its beginning point at the substation and then run back to the "tap" source. Any point along the entire length of the then existing line over landowners' property, from its entry to its exit, could be considered for the "tap" point. There was only one low point in the old easement which would not be satisfactory, and that point was unsatisfactory because a stream crossed that easement at that point.
Accessibility to a "tap" placed between the paved road and the stream would be available from the paved road. Accessibility to a "tap" south of the stream would be available across the new right-of-way which would exit landowners' property at a dirt road. There is no accessibility to the "tap," as presently located, from the point the new right-of-way exits landowners' property. The Power Company refused to consider locating the "tap" point south of the stream. It did not view or drive over this area, although access to such "tap" point is without hindrance. Utilizing such "tap" point would eliminate a bend or angle in the line, thus reducing cost; both factors, according to the Power Company, were important considerations. The Power Company stated that it never considered any access to the "tap" other than from the paved road. This refusal to consider an alternative point or points, or to exercise its discretion after considering all alternatives, was found by the trial court to fall within the definition of arbitrary and capricious.
Part and parcel of the arbitrary and capricious test is that the route selection must not wantonly injure the land. The evidence is that location of the right-of-way injured the land to 20% of its value, whereas if reasonable discretion were exercised to place the "tap" point south of the *1110 stream, the land's value would be injured only to the extent of 5%. Needless injury of four times the amount of a necessary injury was viewed as a wanton injury by the trial court. This is truly a reckless disregard of the landowners' right to only a reasonable injury to this land when a delegated agent of the state takes their property for a public purpose, and solely for a public purpose.
It follows from all the above that, under the facts of this case, the judgment below is due to be, and it is hereby, affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX, SHORES and ADAMS, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I dissent. The majority sets forth new law without calling it new law.
The law in the area of condemnation is well settled. The legislature has delegated the right of eminent domain to Alabama Power Company, and the selection of the route for the power lines is within the condemnor's discretion. Alabama Electric Co-op, Inc. v. Watson, 419 So.2d 1351 (Ala. 1982). The only limitation placed on the condemnor is that it act in good faith and not in an arbitrary, capricious, or wantonly injurious manner. Hogan v. Alabama Power Co., 351 So.2d 1378 (Ala.Civ.App.), cert, denied, 351 So.2d 1388 (Ala.1977); Alabama Power Company v. Hamilton, 342 So.2d 8 (Ala.1977); Berry v. Alabama Power Co., 257 Ala. 654, 60 So.2d 681 (1952).
"Arbitrary" is defined as "without adequate determining principle; ... not done or acting according to reason or judgment." Black's Law Dictionary at 96 (5th ed. 1979). "Caprice," the root word of "capriciousness," means "whim, arbitrary, seemingly unfounded motivation." Id. at 192. In the present case, Alabama Power Company clearly demonstrated that it was not acting arbitrarily or capriciously or without reason when it presented evidence that the route chosen was necessary to gain access to the lines in bad weather to keep customers in service.[1] While there was evidence that another route could have been chosen over the landowners' property, there was no evidence that the route chosen was improper from an engineering standpoint. Consideration of appropriate engineering factors is sufficient to insulate Alabama Power Company's decision from charges of arbitrariness or capriciousness.
In Watson, Alabama Electric Co-op (AEC) routed transmission lines parallel to and adjacent to Alabama Power Company lines, except for a detour through the Watsons' property. If AEC had not made this detour, the lines would have crossed a vacant lot and rendered it unusable. This Court reversed the trial court's decision that AEC abused its discretion and capriciously injured the Watsons:
"The essence of the [lower] court's decision is that another route would be `more suitable' in contradistinction to the rule that the landowner may not object merely because another location `would have been suitable or just as suitable.'"

419 So.2d at 1354 (emphasis added). The Court further recognized that one attempting to prove that a condemnor acted capriciously bears a heavy burden. We held that the mere possibility that another route could have been adopted was not enough to render the condemnor's decision arbitrary or capricious.
In Hogan, Alabama Power Company chose a transmission line route. Hogan, the owner of the property to be condemned, said he did not want the line in the proposed location but would be willing to discuss its location to the south of his property. Alabama Power Company decided to *1111 move the line southeast of the initially proposed location so as not to interfere with Hogan's present use of the land, and the land was condemned for this alternate route. Hogan appealed, because the final location of the power line would interfere with the development of his acreage into a resort area. The Court of Civil Appeals refused to find that Alabama Power Company acted wantonly and capriciously in deciding on the alternate location of the power line. Contrary to the opinion of the majority, Hogan does not hold that a condemning authority has an obligation to reroute its lines to minimize interference with the landowner's use. Rather, Hogan stands for the proposition that if the power company chooses to alter the route in substantial conformity with the property owner's wishes, the property owner cannot then complain that the condemnor acted arbitrarily and capriciously in choosing the alternate route. Until today, this Court has been reluctant to hold that the condemnor has a duty to consult with the property owner on the selection of property to be condemned.
When the trial court hears ore tenus evidence, its judgment based on that evidence is presumed correct and will not be disturbed on appeal unless plainly and palpably erroneous. Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). Here, the judgment was plainly and palpably erroneous, because Alabama Power Company had a legitimate reason, easier access to the power lines for repair purposes during bad weather, for choosing one route over the other.
The emphasis in the majority opinion is not on whether the power company acted arbitrarily and capriciously but, rather, whether Alabama Power Company acted in a wantonly injurious manner. The majority finds evidence of a "wantonly injurious manner" in the fact that the value of the land will be reduced 20% if the Alabama Power Company route is followed, while its value will be reduced only 5% if the landowners' route is followed. I know of no case where we have directly addressed the issue of whether the condemnor acted in a wantonly injurious manner. In addition, we have not yet been called upon to explain the meaning of the standard "wantonly injurious," and the majority does not shed any light on the subject here. It may be that "wantonly injurious" is but a slight variation of arbitrariness and capriciousness. Black's defines "wanton injury" as an "injury produced by conscious and intentional wrongful act, or omission of known duty with reckless indifference to consequences." Black's, supra, at 1419. I cannot say that Alabama Power acted in a wantonly, or intentionally, injurious manner, since I do not think it acted arbitrarily and capriciously. If instead of looking at "wantonly injurious" as requiring some intentional act the court looked at "wantonly injurious" as meaning unduly injurious, Valemont Realty Corp. v. State Board of Public Utility Comm'rs, 9 N.J.Misc. 70, 153 A. 90 (1931), the majority opinion is still wrong, since the increased diminution in value (an increase from 5% to 20%) is not an exaggerated amount. The diminution in value should be considered only in determining the condemnation price.
I would reverse the decision of the trial court and remand the case for a determination of damages due the landowners.
MADDOX, SHORES and ADAMS, JJ., concur.
NOTES
[1] There was conflicting evidence as to whether the southern end of the property was, in fact, prone to flooding. However, Vanderford testified that the possibility of flooding was not the only reason the southern end was not chosen. Alabama Power Company also wanted access via a paved road, as opposed to a dirt road, with a shorter walking distance over pastureland.