165 So. 93

### PORTER COAL CO. v. DAVIS.

6 Div. 688.

Supreme Court of Alabama.

Nov. 21, 1935.

Rehearing Denied Jan. 16, 1936.

360

Cabaniss & Johnston and Jos. F. John-
ston, all of Birmingham, for appellant.

Hugh A. Locke and Frank M. James, both of Birmingham, for appellee.

FOSTER, Justice.

Plaintiff claims and recovered compensatory and punitive damages against appellant on a claim that defendant's servants, duly authorized, unlawfully and maliciously prevented plaintiff from going upon defendant's premises to inspect or check the weighing of coal mined in defendant's mines after plaintiff had been selected by the miners, or a majority of them, to do so, and after he had made an agreement to that effect with them.

Appellee seems to insist that he has a cause of action regardless of section 1710, Code, on the theory that his contracted rights were wrongfully and maliciously interfered with by defendant. The only conduct of defendant material here in question is the refusal to allow plaintiff to go upon defendant's premises to perform the services which we have stated. Defendant had the right to do this, unless it was required by some rule of law applicable to those circumstances to permit plaintiff to go upon its premises for that purpose. If there is such a rule of law, defendant's breach would consist in the violation of that rule, for it is not contended that defendant caused plaintiff to be discharged from the service of the miners who had selected and employed him to do this work. It is therefore not within the rule of such cases. Pickens v. Hal J. Copeland Grocery Co., 219 Ala. 697, 123 So. 223; Louisiana Oil Corporation v. Green, 230 Ala. 470, 161 So. 479. So that the basis of plaintiff's cause of action must be that there was some rule of law whereby defendant owed plaintiff the legal duty to allow him to go upon its premises and perform the service which we have mentioned. The only rule of law relied upon and argued in brief which imposes such a duty is section 1710, Code. Appellant argues that it is unconstitutional and void, and indefinite and inoperative; that a statute cannot impose a legal duty which is dependent upon the will of some other person.

We think the justiciable right of plaintiff in this case is dependent upon that section of the Code, its validity and interpretation.

The matter argued by appellant in this connection is that it is void for uncertainty,

in that "it does not say how the miners shall select a check weighman: it does not provide how, by whom or when notice must be given to the employer: it is completely lacking in any machinery for its enforcement."

■ The section (1710, Code) does provide that "the miners employed and working therein may furnish a check weighman." The manner in which he is to be selected is not prescribed. Not being so, the miners may pursue their own method, and no one else is given by the statute, nor its implication, any right to suggest or require how they shall proceed and select the man they are to furnish. It is not necessary in order to sustain a statute that such detail must be provided in it, when it fairly means that it is left to the discretion of those interested. The statute operates to fix the duty of defendant when the miners have exercised the right conferred on them. In so far as defendant is concerned, its legal duty becomes effective upon the exercise of an option delegated by law to others. This has been generally held to be within legislative competency, as we will undertake to show later.

It is not therefore an infringement of defendant's rights, nor uncertain to the extent that it is void because it permits those to whom the power is delegated to exercise their discretion as to the time, place, or manner of doing so. When they act, and defendant has sufficient information of that fact, then section 1710, Code, directs that defendant operating a coal mine shall give to the weighman selected access to and permit examination of the scales, measures, weights, and accounts. The statute does not, and no constitutional provision requires that it shall, provide for any definite form or character of notice or proof to defendant.

The primary concern of defendant is to know that the miners have selected a capable weighman to render this service without expense to defendant. But defendant would not, we think, be justified in demanding the pursuit of a custom as to the manner of selecting the weighman, which is not fairly inferable as a requirement of the statute which relates to the subject.

We see no interest which the statute conserves for the coal company in respect to the manner in which the weighman is selected, so long as there is no question about his selection, or his capacity and conduct. ·

■ It is also urged that the statute is unconstitutional because it, in a measure, delegates to the miners an essential feature of the duty thus prescribed; that it delegates legislation when the Legislature should make a completed enactment. This is a subject which has been often discussed by the courts. After much care, and with great exactness, it has been thus stated: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 484, 55 L.Ed. 563; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294.

■ The same power to legislate in conformity to the Constitution is also said to exist when the Legislature passes a statute to take effect upon the happening of a future event, and to delegate to another the power to determine or the discretion to create the event upon which it shall operate. The Municipal Code, as first enacted, was held properly to take effect when the city or town should so ordain. Ward v. State, 154 Ala. 227, 45 So. 655. And a city was held to have the power to determine whether a dispensary law should be there operative; and to fix a standard of conduct in the event it should elect not to conduct a dispensary. Ex parte Hall, 156 Ala. 642, 47 So. 199. And a county board of education was given the right, within the Constitution, to fix many matters of detail, which when done had the effect of putting into operation statutes conditioned to operate upon that contingency. McNiell v. Sparkman, 184 Ala. 96, 63 So. 977. And so a statute which removed the county seat of Baldwin county was held properly to be effective only when and if the commissioners, thereby created, ascertained certain facts to have occurred. Hand v. Stapleton, 135 Ala. 156, 33 So. 689.

The Lever Act of Congress (40 Stat. 276, as amended) relating to unjust and unreasonable rates was held to be void for uncertainty and incompleteness, because a constituent element of the offense (reasonableness of the rates) was not definitely prescribed, but was to be fixed by some extraneous authority. It was not completed.

legislation. "An ascertainable standard of guilt [must be] fixed by Congress rather than by courts and juries." It "forbids no specific or definite act." United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045; Standard Chemicals & Metals Corporation v. Waugh Chemical Corporation, 231 N.Y. 51, 131 N. E. 566, 14 A.L.R. 1054.

■ But section 1710 does provide for a specific and definite act authorizing the performance of a power, and creating a duty not to exist until the power has been exercised. There is no element of duty left uncertain or not prescribed. Its performance is merely postponed until the miners create the condition on which it shall operate. Such legislation is within the rule defining the extent to which the Legislature may go in fixing a contingency for the law to be effective.

In the Lever Act an element of the duty was left to the varying opinions of the courts or juries trying the case to determine whether the rates were just and reasonable, and did not fix a standard uniformity applicable after it is put into operation. It was not dealing with a situation where the duty was definitely prescribed, but when its operative effect was dependent upon the discretion of others, as here.

In the cases of Savage v. Wallace, 165 Ala. 572, 51 So. 605, and Pendley v. Commissioners' Court, 185 Ala. 523, 64 So. 592, the act embraced a term which had no precise meaning, stock law, and there was no reference to a method by which it could be made so.

In the case of Standard Oil Co. v. State, 178 Ala. 400, 59 So. 667, the intention was not clearly expressed, nor was there a reference to any method by which it could be ascertained. And in Woco Pep Co. v. City of Montgomery, 213 Ala. 452, 105 So. 214, it was well said that the Legislature must define the crime and fix its punishment, and it must be so explicitly done as that all men subject to it must know what act is prohibited. Such was the holding as to the Lever Act.

Those cases cited by appellant are not in conflict with the principle we think applies to section 1710, as we understand them.

Assignments 12, 13, 14, and 15. We assume these assignments relate to the exception to that part of the oral charge first appearing on page 73 of the transcript relating to notice to the company.

■ As we have said, the statute has no expressed requirement as to notice. When plaintiff presented himself, and claimed that he had been selected by the miners, defendant could demand that it be furnished reasonably satisfactory evidence of that fact. It was not required to accept a man in that capacity merely because he so claimed. The evidence was conflicting as to that. One aspect tends to show that defendant's superintendent demanded such reasonable proof of his claim, and another tended to show as an inference that his refusal was based upon the fact that the election was not held at the mines in open meeting as he had demanded that it be held. We see in the statute nothing that permits defendant to require the meeting to be so held, and if that was his objection, it was not well founded. But defendant had the right to reasonable assurance that plaintiff had been selected by the miners, and to demand such proof of that fact as would be sufficient to satisfy a reasonably prudent man. If he demanded the proof, and it was a reasonable demand, and it was not furnished until later, after which he was allowed to do the work, there was no breach of duty by defendant. But the judicial determination of what is reasonable proof does not make the duty less specific, since it does not delegate the power to fix the exactness of its requirements, but only the occasion for its operation. Field v. Clark, supra.

We think the charge to which exception is here noted fairly left that question to the jury on the conflicting evidence. The use of the word "waive" in that connection is not misleading we think, not to say that it is inaccurate.

■ Assignment No. 9. The defendant contends that as a matter of law punitive damages are not here subject to recovery. We think the action is in tort, not for an interference with plaintiff's contract with the miners, but for the failure of defendant to permit plaintiff to act as check weighman after the miners had so furnished him to defendant, and that thereby defendant violated a duty enjoined by section 1710, Code. The right to act as check weighman involved the duty by defendant to permit him to do so. Its breach was that of a duty declared by law. That is what a tort is. Macrum v. Security Trust & Savings Co., 221 Ala. 419, 129 So. 74.

■ For a tort committed willfully or wantonly or with malice, fraud, gross negligence, or oppression, punitive damages may

be recovered in the discretion of the jury, though the act is one of omission. South & N. A. R. Co. v. McLendon, 63 Ala. 266; Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L.R.A.(N.S.) 1224.

██ Assignment No. 11. This is based upon the refusal of defendant's charge No. 14. August 7th was the date when plaintiff proposed to begin to perform this service. The mine shut down October 1st, and reopened on October 17th. The shut down was said to be due to a strike occasioned by this occurrence. From August 7th to October 1st it worked 42 days. Defendant's conduct could have prevented plaintiff from earning for only 42 days' work because he was allowed to do the work when they reopened, although he had begun this suit; proof of his selection having been accepted by that time, and the employees then went back to work.

Charge No. 14 seeks to limit the amount of recovery for lost earnings to those 42 days. We see no reason why it should not have been given.

It is insisted that the following portions of the oral charge cover this aspect of the claim: "Then you would look to the contract to see what he would have gotten out of the contract had he been allowed to perform." "How much was he to get?" "And how many days was he interfered with in the performance of that contract?"

When evidence is clear and uncontradicted to a definite result, a requested affirmative charge to so find is due to be given. The oral charge left the matter to the jury, which was proper in the absence of a written request for a specific finding. Under the oral charge the jury should find the result. Moreover, they were not there definitely instructed just how that result should be calculated. They were not told that the amount must be figured for the number of days he was prevented from working on the basis of the amount he would have received, that is, actually paid for that work. It is not clearly stated that they were confined to the number of days the miners worked for defendant, so that plaintiff could have performed the service. The requested charge made all this specific, and we think should have been given, and its refusal was prejudicial.

██ It also appears that in the opening statement to the jury by plaintiff's counsel, and his questions to plaintiff as a witness, he continued to press matters which the court had ruled were illegal, and which were illegal, and whose only effect was to prejudice the jury against defendant. When a ruling is made, and by it the question is fairly presented and exception is taken, or it is subject to review without exception, we have often referred to the impropriety of continuing to attempt to bring out the same matter, which has a tendency to inflame the minds of the jury. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389; Britling Cafeteria Co. v. Shotts, 230 Ala. 597, 162 So. 378; Pryor v. Limestone County, 225 Ala. 540, 144 So. 18; Birmingham Electric Co. v. Ryder, 225 Ala. 369, 144 So. 18.

In our judgment, the excessive amount of the damages awarded by the jury shows that something unduly aroused their prejudice against the defendant. We think the matters mentioned had that tendency and effect, entitling defendant to a new trial as moved for.

Reversed and remanded.

GARDNER, BOULDIN, and BROWN, JJ., concur.