762 So.2d 828 (2000)
H.E. MONROE, Jr., as Commissioner of the Department of Revenue; and James D. Martin, as Commissioner of the Department of Conservation
v.
HARCO, INC., et al.
1981065.
Supreme Court of Alabama.
February 11, 2000.
*829 J. Wade Hope, Alabama Department of Revenue, for petitioner H.E. Monroe, Jr.
William A. Gunter, Alabama Department of Conservation and Natural Resources, Montgomery, for petitioner James D. Martin.
Matthew C. McDonald and David F. Walker of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for respondent Harco, Inc., et al.
C. Lee Reeves of Sirote & Permutt, P.C., Birmingham, for respondents Bruno's, Inc., Sears & Roebuck Co., Wal-Mart Corp., Kmart Corp., Rite Aid Corp., and Delchamps, Inc.
Matthew H. Lembke of Bradley, Arant, Rose & White, Birmingham, for respondent CVS Pharmacy.
MADDOX, Justice.
This case involves the administration of the sales-tax laws of this State. The specific legal issue presented is whether § 40-23-36(b), Ala.Code 1975 ("Subsection (b)"), which delegates to the executive branch the authority to limit the sales-tax discount that Alabama retailers can claim for collecting sales taxes and remitting them to the state, violates the separation-of-powers principle embedded in § 43, Alabama Constitution, 1901.[1]
This constitutional issue arose when Harco, Inc., and other large retailing chains, collectively referred to herein as "the retailers," sued H.E. Monroe, the commissioner of the Department of Revenue, and James D. Martin, the commissioner of the Department of Conservation, to permanently enjoin the enforcement of Administrative Regulation 810-6-4-.03, which set a $900 limit on the sales-tax discount that could be claimed by a retailer, regardless of the amount of sales taxes collected by the retailer.
The retailers claimed the Governor's issuance of an executive order, which led to the promulgation of a corresponding administrative regulation by the Department of Revenue, violated the separation-of-powers provisions of § 43 of the Constitution. The Circuit Court of Montgomery County agreed and entered a judgment holding that the executive order violated § 43. The commissioners of the Departments of Revenue and Conservation appealed. After carefully reviewing the briefs and thoughtfully considering the parties' oral arguments, we conclude that no constitutional violation occurred in regard to the Governor's issuance of that executive order; consequently, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

I.

Facts and Procedural History
Since 1939, when the Legislature originally enacted the sales-tax laws, those laws have allowed retailers, who collect and remit the sales taxes to the State, to claim a sales-tax discount. In fact, the Legislature, in 1939, gave the Governor the authority to issue an executive order directing the Department of Revenue to provide for a discount not to exceed 3% of the taxes levied by the Sales Tax Act.[2] No discount was permitted, however, if the *830 retailers did not remit the taxes to the State before they became delinquent.[3]
Shortly after the sales-tax laws became effective, questions arose relating to the procedures for claiming the sales-tax discount. In 1943, the Attorney General issued an opinion to the commissioner of the Department of Revenue, advising him that the Department was not authorized to allow a discount for the remittance of collected sales taxes unless the beneficiary of the discount strictly complied with the statute. In 1951, the Legislature amended the statute by adjusting the amount of the discount, but nevertheless retained the language providing that no discount would be authorized or allowed regarding taxes not paid before they became delinquent. In 1959, the Legislature rewrote the salestax statutes, but retained the sales-tax discount. See Acts 1959, 2d Ex.Sess., Act No. 100, p. 298, § 34, which is now codified as § 40-23-36(a), Ala.Code 1975 ("Subsection (a)").
After the Legislature adopted the 1959 Act, Governor John Patterson, on January 8, 1960, issued Executive Order No. 2, which authorized the Department of Revenue to provide for a sales-tax discount. Pursuant to that order, the Department issued Regulation 810-6-4-.03, which allowed the sales-tax discount on taxes collected on sales made on or after October 1, 1959. This regulation was subsequently ratified pursuant to the Administrative Procedure Act (§§ 41-22-1 to 41-22-27, Ala. Code 1975), effective October 1, 1982. The administrative regulation closely mirrored the sales-tax discount allowed by the statute.
On May 7, 1996, Governor Fob James issued Executive Order No. 19, which authorized the Department to set a maximum discount of $900 per month, but the Revenue Department never promulgated any regulations to implement the provisions of that executive order. On May 20, 1996, the Legislature adopted Act No. 96-785. That Act amended the sales-tax statutes in their entirety, but what is now Subsection (a) of the sales-tax-discount statute remained unchanged, while Subsection (b) was added.[4] This new Subsection allowed the Governor to authorize the Department to set a maximum discount for any licensed retailer that collects and remits sales taxes to the State, and it authorized the Governor to limit the discount to a particular maximum, a ceiling that would apply to each retailer regardless of the number of the retailer's retail locations in the State. Section 1 of the Act earmarked the additional amounts remitted to the State as a result of applying the ceiling, for use by the Department of Conservation and National Resources for renovation of the State's park system and for use by the Department of Human Resources in administering its foster-care program.
On May 31, 1996, Governor James issued Executive Order No. 20, which rescinded Executive Order No. 19 and authorized the Department of Revenue to promulgate regulations making the discount-cap effective. The Department issued the regulations, and this lawsuit by the retailers followed. The trial court held *831 that the executive order and the Department's regulations were unconstitutional. The commissioners of the Departments of Revenue and Conservation appealed.

II.

Standard of Review
"In reviewing [a question regarding] the constitutionality of a statute, we `approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.'" Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala.1991) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Moreover, "[w]here the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it." McAdory, 246 Ala. at 10, 18 So.2d at 815. In McAdory, this Court further stated:
"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
246 Ala. at 9, 18 So.2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. Id.

III.

The Constitutionality of § 40-23-36(b), Ala.Code 1975
Applying the standard of review set out in Part II, we must answer this question: Is § 40-23-36(b) an unconstitutional delegation of legislative power to the executive branch? We think not. Article III of the Alabama Constitution of 1901 creates the framework for the division of powers between the State's legislative, executive, and judicial branches. Each branch within our tripartite governmental structure has distinct powers and responsibilities, and our Constitution demands that these powers and responsibilities never be shared. But "the doctrine of separation of powers does not prohibit the Legislature's delegating the power to execute and administer the laws, so long as the delegation carries reasonably clear standards governing the execution and administration." Folsom v. Wynn, 631 So.2d 890, 894 (Ala. 1993); see also Porter Coal Co. v. Davis, 231 Ala. 359, 362, 165 So. 93, 96 (1935) (where this Court stated that "`[T]he legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes[,] or intends to make its own action depend'") (quoting United States v. Grimaud, 220 U.S. 506, 520, 31 S.Ct. 480, 55 L.Ed. 563 (1911), in turn quoting Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 36 L.Ed. 294 (1892)). To deny the Legislature the power to make a law delegating a power to determine some fact or thing "`would be to stop the wheels of government.'" Porter Coal Co., 231 Ala. at 362, 165 So. at 96 (quoting Grimaud, 220 U.S. at 520, 31 S.Ct. 480). This Court has explained:
"`The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, "is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law." The first cannot be done. To the latter, no valid objection can be made.'"
*832 Heck v. Hall, 238 Ala. 274, 282, 190 So. 280, 286 (1939) (quoting State ex rel. Adams v. Burdge, 95 Wis. 390, 402, 70 N.W. 347, 350 (1897)).
Sales-tax discounts are unique to taxing schemes involving the collection and remission of sales taxes.[5] Unlike a tax deduction, which is commonly associated with income taxation, a sales-tax discount does not decrease the tax base. Cf. Walter Hellerstein, "State and Local Taxation of Electronic Commerce: Reflections on the Emerging Issues," 52 U. Miami L.Rev. 691, 697-98 (1998); Charles E. McClure, Jr., "Taxation of Electronic Commerce: Economic Objectives, Technological Constraints, and Tax Laws," 52 Tax L.Rev. 269, 338 (1997); and Edward A. Zelinsky, "Are Tax `Benefits' Constitutionally Equivalent to Direct Expenditures?" 112 Harv. L.Rev. 379, 404 (1998), discussing the components of the tax base for retail sales taxes. In Alabama, as in most States, the sales-tax discount functions as a collection tool; Section 40-23-36(a) expressly disallows the discount if a retailer is delinquent in its remittance.[6] The tax base, which is principally determined by § 40-23-2 and further defined by various sales-tax exemptions, see, e.g., § 40-23-4 (exempting the sales of lubricating oil, gasoline, and fertilizer, etc., from the collection of the tax), is determined by the type of transaction, and it is not reduced by the allowance of a sales-tax discount. The discount is a monetary incentive, and it is granted to the retailer for making timely remittances. The Legislature "pays" the discount out of collected sales-tax revenues by allowing the retailer to retain a small percentage of the revenue that otherwise would have to be remitted to the State if certain conditions are not met. It follows, then, that the reduction of a discount is not the levy of a tax. See generally, Zelinsky, supra (discussing cases decided by the United States Supreme Court involving issues requiring a determination of whether various kinds of tax breaks in the Internal Revenue Code are expenditures). Consequently, the delegation of powers to the Governor to set a sales-tax discount that is within reasonable limits established by the Legislature is not, in and of itself, an unconstitutional encroachment on the Legislature's power to levy taxes. Therefore, the key question presented here is whether the Legislature has set "reasonable limits."
This case is analogous to Folsom v. Wynn, supra, in which this Court considered whether § 40-4-90, Ala.Code 1975, sometimes referred to as the "proration statute," was constitutional.[7] In that case, Judge William J. Wynn, a circuit judge in the Tenth Judicial Circuit, sued to enjoin the enforcement of the proration statute, in order to avoid reductions in appropriations to the judicial branch. He argued that the statute, which allowed the Governor unilaterally to curtail spending approved by the Legislature, was a delegation of legislative power to the executive branch, and thus violated the provisions of Art. III, § 43, of the Constitution, the *833 same section of the Constitution relied upon by the retailers here.
In Folsom, this Court held that the proration statute had not been shown to be unconstitutional, basing its holding on the conclusion that the proration statute contained sufficient guidance to ensure that the Governor effectuated the Legislature's intent. 631 So.2d at 895. Consequently, § 40-4-90 was upheld because it would not apply in specific instances involving differing facts and circumstances. For example, the Court held that the proration statute did not apply to "constitutionally mandated appropriations or to appropriations otherwise excepted or specified by statute as being fully payable." Id. Furthermore, the Court noted that the statute forbade the Governor from restricting appropriations to coordinate branches "below what [was] adequate and reasonable for [those branches] to perform [their] constitutionally mandated duties." Id. at 896.
In this present case, the restrictions on the Governor's ability to determine the amount of sales-tax discounts to be allowed to licensed retailers throughout the State are no less general. Section 40-23-36, in its entirety, provides:
"(a) The Governor may, by executive order, authorize the Department of Revenue to provide by proper rules and regulations for the allowance of a discount, not to exceed five percent of the first $100 of taxes levied and two percent of the taxes levied over $100 by this division and due and payable to the state by any person licensed under the provisions hereof; provided, that no discount shall be authorized or allowed upon taxes which are not paid before delinquency, as in this division provided.
"(b) For any taxes collected by the license holder on or after June 1, 1996, the Governor may, by executive order, authorize the Department of Revenue to provide by proper rules and regulations for a maximum discount to any license holder and shall be limited to that amount for each retail license holder regardless of the number of retail locations of that license holder within the state."
Section 40-23-36(b), when read in pari materia with § 40-23-36(a),[8] does not vest the Governor with unlimited discretion to decide what amount retailers can claim as a sales-tax discount. Subsection (a) expressly disallows the Governor from providing for a discount exceeding "five percent of the first $100 of taxes levied and two percent of the taxes levied over $100." Furthermore, by the terms of Subsection (a), the Governor cannot, under any circumstances, allow a discount to retailers who are delinquent in their remittances.
Based on the foregoing, we cannot say that the Legislature abdicated its legislative function by authorizing the executive branch to establish a maximum sales-tax discount for retailers. We conclude that the restrictions set out in the statute provide the Governor with sufficient guidelines and operable limits regarding the establishment of sales-tax discounts.[9] Clearly, the Governor is prohibited from granting sales-tax discounts exceeding the amounts the Legislature has set out in the statute. Consequently, we hold that § 40-23-36(b) *834 is a constitutional delegation of authority to the Governor to limit sales-tax discounts allowed to retailers for their prompt remittances of sales taxes. Furthermore, we conclude that Governor James's Executive Order No. 20 clearly abides by the aforementioned statutory limitations, and that the legislative scheme of allowing the Governor to determine the amount of the specific sales-tax discount constitutes nothing more that the delegation of a power to determine the amount deemed necessary to carry out the Legislature's intent of ensuring collection and the prompt remittance of sales taxes to the State. Stated differently, it is not "clear beyond reasonable doubt" that the Legislature was prohibited by the State's fundamental law from delegating to the Governor this function to determine the precise amount of the sales-tax discount retailers could claim. McAdory, 246 Ala. at 9, 18 So.2d at 818.
Having determined that the statute is constitutional and that the Governor had the power to issue the executive order, and having further concluded that the regulations promulgated by the Department of Revenue pursuant to that executive order were also validly issued, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
SEE and LYONS, JJ., dissent.
SEE, Justice (dissenting).
"It is settled law that the Legislature may not constitutionally delegate its powers, whether the general power to make law or the powers encompassed within that general power, including the `power of the purse'the power to make appropriations." Folsom v. Wynn, 631 So.2d 890, 894 (Ala.1993). This doctrine of nondelegation is "rooted in the principle of separation of powers that underlies our tripartite system of Government." Mistretta v. United States, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); see Ala. Const.1901, Art. III, § 43. "However, the doctrine of separation of powers does not prohibit the Legislature's delegating the power to execute and administer the laws, so long as the delegation carries reasonably clear standards governing the execution and administration."[10]Folsom, 631 So.2d at 894. Thus, "[s]o long as [the legislature] `shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Mistretta, 488 U.S. at 372, 109 S.Ct. 647 (quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 406, 48 S.Ct. 348, 72 L.Ed. 624 (1928)) (alteration in Mistretta).
In this case, the majority states that because the statute "does not vest the Governor with unlimited discretion to decide what amount retailers can claim as a sales-tax discount," the sales-tax discount statute, Ala.Code 1975, § 40-23-36, contains sufficient guidance for the Governor's exercise of his authority to set a maximum discount for each license holder. 762 So.2d at 833. A limitation on the Governor's discretion, however, is not the same as guidance for the Governor's exercise of authority. The maximum rates for the sales-tax discount prescribed in § 40-23-36(a) give the Governor no guidance as to the maximum discount he should set under § 40-23-36(b).[11]
*835 In Folsom, this Court held that the proration statute, Ala.Code 1975, § 41-4-90, was a constitutional delegation of authority to the Governor, because the statute contained sufficient guidance for the Governor's exercise of that authority. 631 So.2d at 895. Specifically, § 41-4-90 provides that "[t]he governor shall restrict allotments to prevent an overdraft or deficit," and that all allotments "shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimated by the department of finance." The proration statute at issue in Folsom provides guidance in terms of a clear objective"to prevent an overdraft or deficit." The language of the sales-tax discount statute, however, provides no objective and no factors for the Governor to consider in determining the rate or the maximum discount. Cf. Mistretta, 488 U.S. at 374-76, 109 S.Ct. 647 (upholding Congress's delegation of authority to the Sentencing Commission to promulgate sentencing guidelines where Congress, among other things, "charged the Commission with three goals"; "specified four `purposes' of sentencing"; and directed it to consider several specified "factors").
In interpreting a statute delegating power to the executive branch, we defer to the executive branch's own interpretation of the power delegated to it by the Legislature. See, e.g., QCC, Inc. v. Hall, 757 So.2d 1115, 1119 (Ala.2000) (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Therefore, if the executive branch articulates a reasonable and permissible objective to be achieved by the exercise of delegated authority, and the actual exercise of that authority is reasonably calculated to achieve that objective and is not otherwise impermissible, then both the delegation of authority and the exercise of that authority are valid. See QCC, Inc. v. Hall, 757 So.2d at 1119. ("If the [executive's] reading [of a statute] fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the [executive's] judgment `controlling weight.'") (quoting NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995), quoting in turn Chevron U.S.A., 467 U.S. at 844, 104 S.Ct. 2778). However, where, as here, the legislative grant of authority contains no explicit guidance for the executive branch, and the executive branch offers no explanation of the goal it seeks to achieve in its exercise of that authority, the exercise is void.
For the foregoing reasons, Executive Orders 19 and 20, by which the Governor purported to authorize the Department of Revenue to implement the $900-per-license-holder cap on the sales-tax discount, are void. Therefore, I must respectfully dissent.
LYONS, J., concurs.
LYONS, Justice (dissenting).
I join Justice See's dissenting opinion. I write specially to express my reluctance in doing so, because of the deference this Court owes to the presumption of constitutionality that accompanies acts of the Legislature. Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala.1991). If § 40-23-36(b), Ala.Code 1975, delegated to the Governor the authority to set a prompt-payment discount, in light of some *836 reasonably quantifiable criterion, such as the current financial needs of the State or prevailing interest rates or the retailer's costs of collection, a different situation would be presented. However, I am unwilling to imply the presence of such factors as being within the scope of legislative contemplation.
NOTES
[1] Article III, § 43, of the Constitution of 1901 reads as follows:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
[2] 1939 Acts, Act No. 18, p. 16, § 36.
[3] Id.
[4] Section 40-23-36, Ala.Code 1975, reads:

"(a) The Governor may, by executive order, authorize the Department of Revenue to provide by proper rules and regulations for the allowance of a discount, not to exceed five percent of the first $100 of taxes levied and two percent of the taxes levied over $100 by this division and due and payable to the state by any person licensed under the provisions hereof; provided, that no discount shall be authorized or allowed upon any taxes which are not paid before delinquency, as in this division provided.
"(b) For any taxes collected by the license holder on or after June 1, 1996, the Governor may, by executive order, authorize the Department of Revenue to provide by proper rules and regulations for a maximum discount to any license holder and shall be limited to that amount for each retail license holder regardless of the number of retail locations of that license holder within the state."
[5] It appears from the record that sales-tax discounts have been allowed since the first sales tax was adopted. From 1939 to 1951 the Legislature authorized the Governor at his or her option to provide for a discount not to exceed 3% of the taxes collected. From 1951 until the present, the Legislature has continued to authorize the Governor at his or her option to provide for a discount that does not exceed 5% of the first $100 of taxes levied and 2% of the taxes levied over $100. The statute has always included language authorizing a discount "not to exceed" a maximum amount. See Part I, supra.
[6] In its brief, Harco argues that discounts enable collection by reimbursing retailers for costs incurred in collecting and remitting the tax. If we entirely agreed with this argument, our conclusion that the sales-tax discount is a collection tool would nevertheless remain unaltered, because Harco's argument is founded on the premise that collection would become unduly cumbersome without the allowance of a discount.
[7] That statute, among other things, allows the Governor to restrict allotments made by the Legislature, in order to avoid sending the State into debt.
[8] As a general rule of statutory construction, a court considering statutes dealing with the same subject matter should read the statutes together, so as to ascertain the meaning and intent of each and to promote harmony and uniformity in the law. See Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991), and Locke v. Wheat, 350 So.2d 451, 453 (Ala. 1977).
[9] Limitations on the Legislature's authority to delegate power to the executive branch are relaxed in cases where the entity exercising the delegated power itself possesses independent power over the subject matter, as is true in this case. United States v. Mazurie, 419 U.S. 544, 556-57, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); see also Industrial Union Dep't, AFL-CIO v. American Petroleum Inst., 448 U.S. 607, 684, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring in the judgment).
[10] Such standards enable a court "`in a proper proceeding [to] ascertain whether the will of [the legislature] has been obeyed.'" Mistretta, 488 U.S. at 379, 109 S.Ct. 647 (quoting Yakus v. United States, 321 U.S. 414, 426, 64 S.Ct. 660, 88 L.Ed. 834 (1944)).
[11] The validity of the sales-tax discount itself, which was authorized by Executive Order No. 2 in 1960 pursuant to the statute now codified as § 40-23-36(a), is not before this Court. The majority construes § 40-23-36(a) as delegating to the Governor the power to authorize a sales-tax discount for the purpose of "ensuring collection and the prompt remittance of sales taxes to the State." 762 So.2d at 834. Under that construction, the validity of Executive Order No. 2 and the administrative regulations promulgated pursuant to it, would depend on whether the discount thereby established was reasonably calculated to achieve that purpose and was not otherwise impermissible. The majority does not consider whether the $900 maximum discount is reasonably calculated to achieve that judicially articulated purpose.