*333 The Honorable Bob Riley
Governor of Alabama
State Capitol
Montgomery, Alabama 36130
Dear Governor Riley:
We have received your letter requesting an advisory opinion as to whether House Bill 50 and Senate Bill 133 impermissibly extend the powers of the Legislature in violation of the separation-of-powers provisions, §§42 and 43 of the Alabama Constitution of 1901. Section 12-2-10, Ala.Code 1975, authorizes the governor to request an advisory opinion from this Court. It provides that “[t]he Governor, by a request in writing, or either house of the Legislature, by a resolution of such house, may obtain a written opinion of the justices of the Supreme Court of Alabama or a majority thereof on important constitutional questions.”

The Nature of an Advisory Opinion

We note that legislators take the same oath to uphold the constitution of this State as do the members of this Court; therefore, legislators must make their own independent decisions as to the constitutionality of proposed legislation. Moreover, this Court gives great deference to the presumption of constitutionality afforded an act of the Legislature. See Town of Brilliant v. City of Winfield, 752 So.2d 1192, 1201 (Ala.1999)(“For the Court to strike down an act of the Legislature, it must be ‘clear beyond reasonable doubt that it is violative of the fundamental law — i.e., that it violates a limitation on legislative power imposed by the State or Federal Constitution.”). Nonetheless, we provide advisory opinions as an aid to leg *334 islators in fulfilling their constitutional responsibilities.
In issuing advisory opinions, the members of this Court consider in the abstract the question submitted for consideration, without adverse parties and without the benefit of briefing or of an actual case or controversy; in an actual case or controversy, we might reach a different conclusion. See Opinion of the Justices No. 188, 280 Ala. 692, 703, 198 So.2d 269, 280 (1967) (“ ‘The performance by the Justices of the function [§ 12-2-10] contemplates is non-judicial; this for the obvious reason that advisory opinions given do not conclude or vindicate any right or remedy, result in no judgment or decree, bind no one whatsoever.’ ”) (quoting Opinions of the Justices No. 1, 209 Ala. 593, 594, 96 So. 487, 488-89 (1923)). Thus, pursuant to § 12-2-10, Ala.Code 1975, we undertake to offer our opinion as to whether House Bill 50 and Senate Bill 133 violate the separation-of-powers provisions in the Constitution of Alabama of 1901.

Separation of Legislative and Executive Powers

The Constitution of Alabama, like the Constitution of the United States, “expressly vest[s] the three great powers of government in three separate branches.” Ex parte Jenkins, 723 So.2d 649, 654 (Ala. 1998); see also U.S. Const, art. I, § 1; id. at art. II, § 1, cl. 1; id. at art. Ill, § 1; Ala. Const, of 1901, § 42; id. at § 43.[1] Sections 42 and 43 of the Constitution of Alabama of 1901 explicitly provide that “the three principal powers of government shall be exercised by separate departments.” Jenkins, 723 So.2d at 653. Section 42 provides:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
Ala. Const, of 1901, § 42. Section 43 of the Alabama Constitution provides:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
Ala. Const, of 1901, § 43.
In Monroe v. Narco, Inc., 762 So.2d 828 (Ala.2000), this Court described the separation-of-powers provisions of the Constitution of Alabama:
“Article III of the Alabama Constitution of 1901 creates the framework for the division of powers between the State’s legislative, executive, and judicial branches. Each branch within our tripartite governmental structure has distinct powers and responsibilities, and our Constitution demands that these *335 powers and responsibilities never be shared.”
762 So.2d at 831. “The essence of the legislative authority is to enact laws, or, in other words, to prescribe rules for the regulation of society; while the execution of the laws and the employment of the common strength ... seem to comprise all the functions of the executive.” The Federalist No. 75, at 450 (Alexander Hamilton) (Clinton Rossiter ed., 1961); see also Maples v. McDonald, 668 So.2d 790, 792 (Ala.Civ.App.1995)(“The legislature’s power to enact legislation is plenary, limited only by the Constitution.”). Moreover,
“ ‘ “[t]he true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, ‘is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law.’ The first cannot be done. To the latter, no valid objection can be made.” ’ ”
Monroe, 762 So.2d at 831 (quoting Heck v. Hall, 238 Ala. 274, 282, 190 So. 280, 286 (1939))(quoting in turn State ex rel. Adams v. Burdge, 95 Wis. 390, 402, 70 N.W. 347, 350 (1897)). Thus, the core power of the legislative branch is to declare policy through enacting legislation, and the core power of the executive branch is to carry out those legislative policies with a certain degree of executive discretion.

House Bill 50

Currently, under § 41-19-10(e), Ala.Code 1975, the governor is authorized to transfer appropriations between programs within an agency or a department. See § 41-19-10(e), Ala.Code 1975 (“Appropriation transfers or changes between programs within an agency/department may be made only by the Governor and shall be reported to the Legislature quarterly.”). House Bill 50 amends § 41-19-10, Ala. Code 1975, by removing the language authorizing the governor to transfer appropriations between programs within an agency or a department and by adding the following sentence: “Notwithstanding any provision of this section to the contrary, when a specific appropriation has been made by the Legislature for any purpose to any state agency/department, the entire amount of the specific appropriation may be expended by the state agency/department only for the purpose appropriated.” Therefore, House Bill 50 eliminates the power of the governor to transfer appropriations between programs within an agency or a department.[2]
Thus, House Bill 50 reflects a legislative decision to remove from the governor the discretion to make these appropriation transfers — a power the Legislature granted to the governor when it originally enacted § 41-19-10(e), Ala.Code 1975. The Supreme Court of the United States has stated that “[o]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly — by passing new legislation.” Bowsher v. Synar, 478 U.S. 714, 733-34, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (quoting INS v. Chadha, 462 U.S. 919, 958, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)). In *336 the situation presented to us, the Legislature originally granted the governor the discretion to transfer appropriations between programs within an agency or a department. See § 41-19-10(e), Ala.Code 1975. As we noted above,
“ ‘ “[t]he true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, ‘is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of the law.’ The first cannot be done. To the latter, no valid objection can be made.” ’ ”
Monroe, 762 So.2d at 831 (quoting Heck v. Hall, 238 Ala. at 282, 190 So. at 286)(quot-ing in turn State ex rel. Adams, 95 Wis. at 402, 70 N.W. at 350). The Legislature may define the scope of executive discretion so long as in doing so it does not encroach upon the core power of the executive branch to execute a statute.
The decision of the Supreme Court of the United States in Train v. City of New York, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975), is instructive. Train held that while Congress may grant the executive branch discretion in withholding funds Congress has appropriated, the statute in issue, the Federal Water Pollution Control Act Amendments of 1972, did not grant the executive branch discretion to withhold funds, but required that the entire amount appropriated by Congress be spent. Therefore, the Supreme Court held that the entire amount of the funds appropriated by Congress for purposes of the Federal Water Pollution Control Act Amendments of 1972 must be spent. 420 U.S. at 44-47, 95 S.Ct. 839.
Similarly, the Legislature may grant the governor discretion in the appropriation of funds, or the Legislature may require that all funds appropriated for a certain purpose be spent for that purpose. Thus, House Bill 50 is not an improper exercise of the Legislature’s plenary power to enact legislation, so long as it is not applied to interfere with the discretion inherent in the power of the executive branch to execute the law.

Senate Bill 1SS

Senate Bill 133 amends § 29-2-41, Ala.Code 1975, a part of art. 3, ch. 2, title 29, which creates the Contract Review Permanent Legislative Oversight Committee, to allow the committee to review and approve or disapprove, within a limited time, contracts submitted by various State departments. Senate Bill 133 provides, in part:
“(j)(l)a. If the committee has not approved the contract at the conclusion of the 120-day period and if the Legislature is in regular or special session at that time, consideration of the contract shall be referred to the Legislature. The ranking House member of the Contract Review Permanent Legislative Oversight Committee shall introduce a joint resolution expressing legislative approval of the contract. The joint resolution shall be assigned by the officer with such authority to the House of Representatives Education Finance and Appropriations Committee, or its successor, or the House of Representatives Government Finance and Appropriations Committee, or its successor, as appropriate. If reported favorably by the committee, the joint resolution of approval may be adopted by the House of Representatives in the same manner as other joint resolutions in the House of Representatives.
“b. If the joint resolution of approval is adopted by the House of Representa *337 tives, it shall be transmitted to the Senate and shall be carried by the ranking Senate member of the Contract Review Permanent Legislative Oversight Committee. The joint resolution shall be assigned by the officer with such authority to the Committee on Finance and Taxation Education, or its successor, or the Committee on Finance and Taxation General Fund, or its successor, as appropriate. If favorably reported by the committee, the joint resolution of approval may be adopted by the Senate in the same manner as other joint resolutions in the Senate.
“c. If adopted by both houses, the joint resolution of approval shall be presented to the Governor for approval.
“d. If the joint resolution of approval is approved by the Governor within 30 days of the date the joint resolution is introduced in the House of Representatives, the contract is effective according to the terms of the contract.
“e. If the joint resolution of approval is not adopted by both houses and approved by the Governor within the 30-day period, the contract is void ab initio.
“f. Pending legislative and gubernatorial approval specified in this subdivision, the contract may not go into effect.
“(2)a. If the committee has not approved the contract at the conclusion of the 120-day period and the Legislature is not in regular or special session, the contract shall be referred to the Legislative Council.
“b. The Legislative Council, by majority vote, shall either approve or disapprove the referred contract. If the contract is approved, the contract shall take effect pursuant to the terms of the contract. If the contract is disapproved, the contract is void ab initio. Pending action by the Legislative Council concerning a referred contract, the contract may not go into effect. Failure by the Legislative Council to approve or disapprove the contract within 20 days of receipt shall be deemed a disapproval of the contract.”
Senate Bill 133 thus requires legislative approval and gubernatorial consent of all contracts subject to review pursuant to § 29-2-41, Ala.Code 1975,[3] but effectively delegates that function, when the Legislature is not in session, to the sole discretion of the legislative council.
We understand Senate Bill 133 in its essence, however, to permit either the House or the Senate, through action or inaction, effectively to veto a contract entered into by the executive branch for the purpose of carrying out its executive function.[4] If we do not miscomprehend the *338 practical effect of Senate Bill 138, it is our opinion that it would impermissibly interfere with the core executive power, and, therefore, would be unconstitutional.[5] Pursuant to Senate Bill 133, the Legislature retains the right to approve all contracts subject to review under § 29-2-41, Ala.Code 1975. This infringes upon the right and ability of the executive branch to execute the laws enacted by the Legislature. See, e.g., Opinion of the Justices No. 87-3U, 129 N.H. 714, 718, 532 A.2d 195, 197 (1987)(“Once the legislature has made an appropriation for the executive branch, the requirement of fiscal committee approval of contracts made pursuant thereto by the executive branch is an unconstitutional intrusion into the executive branch of government.”);[6] see also Chaffin v. Ar *339 kansas Game & Fish Comm’n, 296 Ark. 431, 448, 757 S.W.2d 950, 956 (1988)(“It is unreasonable to expect any state agency to defy such a body which has the power to determine its well-being.... The ‘advice’ offered by the committee to an agency is tantamount to a legislative order on how to execute a contract.”).
It is imperatively the function of the Legislature to exercise discretion as to what the law will be, but it is imperatively the function of the executive branch to exercise such discretion as is necessary to effectively carry out those laws. See The Federalist No. 75, supra; Monroe, supra. Thus, in carrying out the executive function of implementing a statute, the executive branch has the power, subject to the parameters of the statute, to enter into contracts to execute the statute. To the extent that Senate Bill 133 may interfere with the core power of the executive branch to execute the laws enacted by the Legislature, Senate Bill 133 would exceed the power of the legislative branch.[7]

Conclusion

Sections 42 and 43 of the Constitution of Alabama of 1901 explicitly mandate a strict separation of powers between the three branches of government. It does not appear that House Bill 50 would be an improper exercise of the Legislature’s power to enact legislation, so long as it is not applied to interfere with the governor’s power to execute the laws. However, Senate Bill 133, if tantamount to a single-house veto, raises serious constitutional questions.
QUESTIONS ANSWERED.
Respectfully submitted,
/s/ J. Gorman Houston, Jr. Acting Chief Justice
/s/ Harold See Harold See
/s/ Jean W. Brown Jean W. Brown
/s/ Douglas Inge Johnstone Douglas Inge Johnstone
/s/ Robert B. Harwood, Jr. Robert B. Harwood, Jr.
/s/ Lyn Stuart Lyn Stuart Associate Justices
Honorable Bob Riley
Governor of Alabama
State Capitol
Montgomery, Alabama 36130
Dear Governor Riley:
We have received your letter requesting an advisory opinion pursuant to § 12-2-10, Ala.Code 1975,[1] as to whether House Bill *340 50 and Senate Bill 133 violate the mandate for the separation of powers prescribed in § 43 of the Alabama Constitution of 1901.
House Bill 50
With regard to your request as to House Bill 50 (“HB 50”), we are unable to ascertain whether you have requested an opinion as to the original bill or a substitute bill, because the portion of HB 50 quoted in your letter is quoted from “[t]he substitute to House Bill 50,” but the version of the bill attached to your letter as a copy does not include that language. Under a long-prevailing view, the provisions of § 12-2-10 have been considered as giving the individual Justices of this Court the privilege of issuing — but not requiring— advisory opinions. See Opinion of the Justices No. 274, 394 So.2d 957 (Ala.1981). In view of the uncertainty concerning your request as to HB 50, we most respectfully decline to answer the question regarding HB 50.
Senate Bill 133
Senate Bill 133 (“SB 133”) amends § 29-2-41, AJa.Code 1975, so as to confer on the Legislature, or when the Legislature is not in session, the legislative council, the authority to approve or disapprove contracts entered into by the executive branch for personal or professional services with private entities or individuals. SB 133 further provides that contracts made in violation of its provisions and without prior approval are void ab initio.
Article III, § 42, Ala. Const, of 1901, provides:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
(Emphasis added.) Article III, § 43, provides:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
(Emphasis added.) Article V, § 113, provides:
“The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled ‘The Governor of the State of Alabama.’ ”
(Emphasis added.)
A very similar question was presented to the New Hampshire Supreme Court in Opinion of the Justices No. 87-314, 129 N.H. 714, 532 A.2d 195 (1987). There, footnotes in the budget bill required prior approval by a legislative fiscal committee before the executive branch could purchase or rent computer hardware or software or before funds could be expended to maintain government buildings and grounds. Part 2, Art. 41, of the New Hampshire Constitution is very similar to Art. V, § 113, of the Alabama Constitution. Part 2, Art. 41, provides:
“There shall be a supreme executive magistrate, who shall be styled the Governor of the State of New Hampshire, and whose title shall be His Excellency.”
(Emphasis added.) In declaring that the budget footnotes were an unconstitutional encroachment by the legislative branch *341 upon the executive branch of government, the New Hampshire Supreme Court first turned to a separation-of-powers clause in the New Hampshire Constitution that is quite similar to Art. Ill, § 43, Ala. Const, of 1901. Then, after noting that a certain overlap in functions of the three branches of government was permissible, the court observed that “the legislature may not encroach upon the exercise by the executive branch of clearly executive powers.” 129 N.H. at 717, 532 A.2d at 197. The court noted that “the power to make contracts for the expenditure of the State’s funds is characteristically an executive function under the plain language of the constitution.” Id. Continuing, the court stated:
“The nature of the duty — the exercise of judgment and discretion in the making of contracts — indicates that it is not exclusively a legislative duty, while no one would claim that it is a judicial duty. Hence, the conclusion would seem to follow necessarily, that it is an executive duty which the legislature had the power to impose upon the governor as the ‘supreme executive magistrate’ of the state.”
Id. The New Hampshire Supreme Court’s view of the supremacy of executive authority in the matter of making contracts for the expenditure of the State’s funds is in the mainstream of American jurisprudence. In recognizing that other states considering the question shared its views, the court referred to several other jurisdictions that had reached the same result. The New Hampshire Supreme Court noted:
“In so holding, we come to the same conclusion that other courts have reached when confronted with questions similar to those posed to us. Alexander et al. v. State, 441 So.2d 1329, 1341 (Miss.1983) (‘Once taxes have been levied and appropriation made, the legislative prerogative ends and executive responsibility begins....’); State ex rel. McLeod, Atty. Gen. v. McInn[i]s et al., 278 S.C. 307, 317, 295 S.E.2d 633, 637 (1982) (‘[AJdministration of appropriations ... is the function of the executive department.’); Anderson v. Lamm, 195 Colo. 437, 447, 579 P.2d 620, 627 (1978) (‘[T]he requirement for Joint Budget ' Committee approval unconstitutionally infringes upon the executive’s power to administer appropriated funds.’); In re Opinion of the Justices to the Senate, [375 Mass. 827,] 376 N.E.2d 1217, 1222 (Mass.1978) (‘[T]he activity of spending money is essentially an executive task.’); State ex rel. Schneider v. Bennett, 219 Kan. 285, 301, 547 P.2d 786, 797 (1976) (State Finance Council overseeing use of budget appropriations held to be an unconstitutional encroachment on powers of the executive); In re Opinion of the Justices to the Governor, 369 Mass. 990, 341 N.E.2d 254, 257 (1976) (‘[T]o entrust the executive power of expenditure to legislative officers is to violate [the mandated separation of powers] by authorizing the legislative department to exercise executive power.’); State ex rel. Meyer v. State Board, 185 Neb. 490, 500, 176 N.W.2d 920, 926 (1970) (‘[The legislature] cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of the government. It cannot administer the appropriation once it has been made.’); People v. Tremaine, 252 N.Y. 27, 56, 168 N.E. 817, 827 (1929) (Crane, J., concurring) (holding unconstitutional a requirement that a legislative committee sit with the governor in decisions regarding spending of money on state buildings (see separate opinion of Justice Crane)).”
Id. at 197-98.
This Court has not hesitated to advise the governor that his proposed actions *342 have invaded the Legislature’s province. See Opinion of the Justices No. 86, 249 Ala. 637, 32 So.2d 539 (1947), where the Court, citing Ant. Ill, § 43, Ala. Const, of 1901, advised the governor that he could not appoint committees composed of members of the legislature to study the administration of the prison system, the administration of the ABC system, and the primary and general election laws of the state and charge said committees to report their findings to the governor. We find that SB 133 with its veto power over contracts is just as much a constitutionally impermissible intrusion on the executive branch as the governor’s proposal to put members of the Legislature on study committees and pay them from the Governor’s Contingency Fund and the Governor’s Emergency Fund was an impermissible intrusion upon the legislative branch.
We therefore respond to the question whether SB 133 violates Art. Ill, § 43, Ala. Const, of 1901, in the affirmative.
ONE QUESTION DECLINED; ONE QUESTION ANSWERED.
Respectfully submitted,
/s/ Champ Lyons, Jr. Champ Lyons, Jr.
/s/ Thomas A. Woodall Thomas A. Woodall Associate Justices

. The Constitution of Alabama of 1901 explicitly authorizes three separate branches of government and mandates that each branch of government not encroach upon the powers granted the other branches. The Constitution of the United States vests the legislative power in Congress, the executive power in the President, and the judicial power in the Supreme Court and inferior federal courts. See U.S. Const, art. I, § 1; id. at art. II, § 1, cl. 1; id. at art. Ill, § 1. Thus, in §§ 42 and 43 the Alabama Constitution explicitly mandates a separation of powers between the three branches of government, whereas the Constitution of the United States implies this separation of powers.

. Section 41-19-10(e), Ala.Code 1975, provides that "[ajppropriation transfers or changes as between objects of expenditures within a program may be made only by the Director of Finance.” It does not appear that House Bill 50 modifies this language. Thus, House Bill 50 removes the power of the governor to make transfers or changes between programs, but continues to allow the director of finance to make appropriation transfers or changes between objects of expenditure within a program.

.There are exclusions to the requirements of § 29-2-41, Ala.Code 1975. See § 29-2-41.1, Ala.Code 1975 (excluding contracts undertaken in case of an emergency); § 29-2-41.3, Ala.Code 1975 (excluding contracts for insurance, contracts let by competitive bids, contracts entered into by public corporations and authorities, and contracts the total amount of which, including compensation and reimbursement, does not exceed $1,500.00). However, "independent contractor agreements as well as individual employment agreements" are subject to § 29-2-41 and the proposed amendment to that section contained in Senate Bill 133. See § 29-2-41.2, Ala.Code 1975 (including independent contractor agreements and individual employment agreements within the definition of contracts subject to § 29-2-41).

.The Legislature may act only indirectly to control enacted legislation, that is, it may do so only by enacting subsequent legislation. See Bowsher v. Synar, 478 U.S. at 733-34, 106 S.Ct. 3181 ("[Ojnce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectly — by passing new legislation. ”)(quoting INS v. Chadha, 462 U.S. at 958, 103 S.Ct. 2764). Section 61 of the Constitution of Alabama of 1901 provides that "[n]o law shall.be passed except *338 by bill” and § 63 provides that "no bill shall become a law, unless on its final passage it be read at length, and the vote be taken by yeas and nays, the names of the members voting for and against the same be entered upon the journals, and a majority of each house be recorded thereon as voting in its favor....” Senate Bill 133 would have the effect of enabling either house acting alone to enact subsequent legislation to "control the execution of [a prior] enactment,” thereby violating the § 63 requirement of a majority vote of both houses of the Legislature.

. In an analogous case, the Supreme Court of the United States held in INS v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), that a one-house veto was unconstitutional under the federal constitution because it violated the bicameral requirement of Art. I, §§ 1 and 7, and the presentment clause of Art. I, § 7, cl. 3. In Chadha, the Supreme Court quoted Federalist No. 73 in support of its argument that the one-house veto usurped the power of the executive branch to veto legislation:
" 'It establishes a salutary check upon the legislative body, calculated to guard the community against the effect of faction, precipitancy, or of any impulse unfriendly to the public good which may happen to influence a majority of that body.... The primary inducement to conferring the power in question upon the Executive is to enable him to defend himself; the secondary one is to increase the chances in favor of the community against the passing of bad laws through haste, inadvertence, or design.’ ”
Chadha, 462 U.S. at 948, 103 S.Ct. 2764 (quoting The Federalist No. 73, at 443 (Alexander Hamilton) (Clinton Rossiter ed., 1961)).

. In so holding, the Supreme Court of New Hampshire came
"to the same conclusion that other courts have reached when confronted with questions similar to those posed to us. Alexander et al. v. State, 441 So.2d 1329, 1341 (Miss.1983) ('Once taxes have been levied and appropriation made, the legislative prerogative ends and the executive responsibility begins....’); State ex rel. McLeod, Atty. Gen. v. McInn[i]s et at, 278 S.C. 307, 317, 295 S.E.2d 633, 637 (1982)('[A]dministration of appropriations ... is the function of the executive department.’); Anderson v. Lamm, 195 Colo. 437, 447, 579 P.2d 620, 627 (1978) ('[T]he requirement for Joint Budget Committee approval unconstitutionally infringes upon the executive’s power to administer appropriated funds.’); In re Opinion of the lustices to the Senate, [375 Mass. 827,] 376 N.E.2d 1217, 1222 (Mass.1978) ('[T]he activity of spending money is essentially an executive task.’); State ex rel. Schneider v. Bennett, 219 Kan. 285, 301, 547 P.2d 786, 797 (1976)(State Finance Council overseeing use of budget appropriations held to be an unconstitutional encroachment on powers of the executive); In re Opinion of the lustices to the Governor, 369 Mass. 990, 341 N.E.2d 254, 257 (1976)('[T]o entrust the executive power of expenditure to legislative officers is to violate [the mandated separation of powers] by authorizing the legislative department to exercise executive power.’); State ex rel. Meyer v. State Board, 185 Neb. 490, 500, 176 N.W.2d 920, 926 (1970)('[The legislature] cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of the government. It cannot administer the appropriation once it has been made.’); People v. Tremaine, 252 N.Y. 27, 56, 168 N.E. 817, 827 (1929)(Crane, J., concurring)(holding un *339 constitutional a requirement that a legislative committee sit with the governor in decisions regarding spending of money on state buildings (see separate opinion of Justice Crane)).”
Opinion of the Justices No. 87-314, 129 N.H. at 718-19, 532 A.2d at 197-98.

. The delegation to the legislative council, the agent of the Legislature, to approve or disprove contracts entered into by the executive branch also raises a serious constitutional question. See Metropolitan Washington Airpons Auth. v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 275 n. 20, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991)("If Congress were free to delegate its policymak-ing authority to one of its components, or to one of its agents, it would be able to evade ‘the carefully crafted restraints spelled out in the Constitution.’ ”) (quoting Chadha, 462 U.S. at 959, 103 S.Ct. 2764).

. ‘‘The Governor, by a request in writing, or either house of the Legislature, by a resolution of such house, may obtain a written opinion of the justices of the Supreme Court of *340 Alabama or a majority thereof on important constitutional questions.”